No.   89-306

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

ART VENDER and MARY VENDER,
     Plaintiffs and Appellants,
-vs-
KEVIN D. STONE and ST. PAUL FIRE AND MARINE INSURANCE
     Defendants and Respondents.

APPEAL FROM:   District Court of the Eighth Judicial District,
               In and for the County of Cacade,
               The Honorable Joel Roth, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Richard F. Gallagher, Church, Harris, Johnson &
          Williams, Great Falls, Montana

     For Respondent:

          Robert J. Emmons, Emmons & Coder, Great Falls,
          Montana

          Kevin D. Stone, Great Falls, Montana (Pro Se)

                                   Submitted:  September 20, 1990

                                   Decided:  November 9, 1990
Filed:

                              _____
                                         Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

This action arises out of a 1984 automobile accident in Great Falls, Montana, involving vehicles driven by the plaintiff, Art Vender, and the defendant, Kevin Stone. The jury verdict in the Eighth Judicial District Court, Cascade County, concluded that Art Vender was damaged in the amount of $3,313.90, Mary Vender incurred no damages, and Art Vender and Kevin Stone were each 50% negligent. The Venders filed a motion for new trial. When the District Court did not rule on the motion within the prescribed time, the Venders appealed. We reverse and remand for a new trial.

Appellants present two issues for review:

1. Did the District Court err in instructing the jury on comparative negligence?

2. Did the District Court err by disallowing oral testimony of Art Vender's educational expenses and instructing the jury to disregard Vender's previously admitted oral testimony of those expenses?

The collision occurred at the intersection of Twentieth Street and Tenth Avenue South in Great Falls, Montana, on April 18, 1984, at approximately 9:00 a.m. Vender, alone in his station wagon, approached the intersection traveling south on Twentieth Street. The intersection is controlled by a traffic light. When Vender approached the intersection, the light was red, and one car ahead of him was stopped waiting for the light to change. When the light changed, Vender pulled into the intersection, following the car

2

ahead of him.   Vender intended to make a left turn east on Tenth Avenue South.   Here is the testimony from Vender as to what occurred:

Q.  What did you see when you approached the intersection of Twentieth Street South and Tenth Avenue South?  A. There was a red light for me at the time I approached the intersection, and a car was stopped ahead of me so I stopped.. . .

A.  (Witness steps down from the witness stand and uses pointer for counsel.)  I was stopped with the front of my car approximately back here because of the car ahead of me.  Then when the light turned green, I proceeded out with my car where I was stopped in this area because the first car made a left turn and the car from the south--the first car there turned also, and then the other cars that were coming from the south, they were coming straight through, approximately three cars.

Q.  Alright.  Stop there.  Did you then have to wait for those cars coming straight through before you completed your turn?  A.   Yes.   I was stopped right in here approximately waiting for those other cars to go straight through so that I could eventually make a left turn.

. . .

Q.  Alright.  Then three cars cleared and then what did you do?  A.   I was going to make a left hand turn but then that's when I was hit broadside from Mr. Stone.

Q.  From what direction were you hit?  A.   He was coming from the east.  He was in this lane.

At the time of this incident, Tenth Avenue South was laned for two lines of traffic in each direction.   Defendant, Kevin Stone, was driving a GMC four-wheel pickup west on Tenth Avenue South on the inside lane of traffic.   He drove into the intersection, and struck the stopped Vender vehicle on the driver's side.   Here is his testimony respecting the accident:

Q.   You have heard Mr. Vender's testimony of what happened on April 18, 1984, and how the accident occurred.   I would like you to tell the jury your

3

version, if you would, please, of what happened. A. I was going down Tenth in the left lane west, and when approaching the intersection I didn't see the light and when I did look around, he was sitting in the middle of the intersection and I turned and tried and looked beside me to see if I could get over and it was kinda too late and I was skidding--and skidded out into the intersection and hit him in the left rear side.

. . .

Q. Was there anything in your windshield or on your dash that obstructed your view of the road in front of you as you were going west in the left lane? A. No.

Q. Was there traffic in your lane of travel? A. No.

Q. Between you and the intersection? A. No.

Q. You had a clear view of the intersection; is that correct? A. Yes.

Q. Now you told the jury you didn't see the light but that you did skid so you must have seen the light at some point and put on your brakes, is that correct? A. No. I saw Mr. Vender.

Q. You never did see the light? A. No. I was trying--I was looking beside me and I was looking at him. I was going to try to miss him. I never did look at the light.

Q. Did you see any other cars at the intersection or stopped at the intersection. A. On Tenth Avenue going west there was none . . .

Q. Were there any cars any other place that you noticed? A. Only one I noticed was the green station wagon in the intersection and it was--when I looked and made sure there was nobody beside me that I could go around him, it was too late and that was the only one I saw in the intersection . . .

Q. I take it from your testimony that you didn't see the red light that was in your lane of traffic. A. I didn't see any light, no.

Q. You didn't know if the light was green, yellow or red, is that true? A. True.

. . .

4

Q. Well, clear that up for me then. A. I said I looked to the right with my foot on the brakes already. I was on the brakes as soon as I seen him.

Q. Alright. A. And I looked to the right and looked back around at his car and it was just too late to move over. I had to hit him no matter what and if there had been somebody beside me, I would have hit them too.

Q. Okay. You didn't have time to stop or to maneuver out so that you wouldn't hit him? A. There was no time to stop. There was no time to stop.

Over Vender's objections, the District Court by its instructions, submitted to the jury the issue of the comparative negligence of both Vender and Stone. As a result, the jury returned a special verdict and attributed 50% of the cause of the accident to the negligence of Stone and 50% attributable to Art Vender.

There was other evidence in the case that the traffic light controlling the intersection, insofar as Twentieth Street was concerned, had sensors buried at the approaches to the intersection which triggered a change of light for traffic on Twentieth Street from red to green. The testimony indicated that regardless of the number of vehicles that may have come to a stop waiting on Twentieth Street to cross the intersection, the maximum green time for that crossing would be 27 seconds plus 3 seconds for the amber light.

There is no direct evidence in the record as to whether the traffic light facing Stone was red or green when he entered the intersection. The effect of Vender's testimony is that he entered the intersection on Twentieth Street on a favorable green light and that he did not see if the light changed before the moment of

5

collision. Stone argues that Vender's light must have changed from green to amber to red before the collision, based on the testimony that the traffic light facing Vender would be green for no longer than 27 seconds, with an amber light of 3 seconds. Vender's argument assumes without other evidence that the number of vehicles on Twentieth Street could not cross the intersection in that period of time.

It is our view of the law, however, when applied to the facts of this case, that Vender was lawfully in the intersection, and that Stone, even if the traffic light had turned green in his favor at the time he entered the intersection, had a duty to keep a lookout so as to see and observe the traffic lights and the stopped car of Vender in the intersection, and to control his speed in such manner as to be able to avoid colliding with the Vender vehicle. On that basis, as a matter of law, Stone was solely responsible for the accident. An examination of the statutes, and the law applicable thereto will explain why.

The key statute to be looked at is § 61-8-207, MCA. It provides:

> 61-8-207. _Traffic-control signal legend._ Whenever traffic is controlled by traffic-control signals . . . the following colors . . . shall indicate and apply to drivers of vehicles and pedestrians as follows:
>
> (1) Green alone or "Go":
>
> (a) Vehicular traffic facing the signal may proceed straight through or turn left or right unless a sign at such place prohibits either such turn. But _vehicular traffic, including vehicles turning right or left, shall yield the right-of-way to other vehicles . . . lawfully within the intersection_ . . . at the time such signal is exhibited. (Emphasis added.)

6

Applying the foregoing statute to the facts of this case, Art Vender, traveling south on Twentieth Street, entered the intersection when the light turned green, relying on the statute that he could proceed straight through or turn left. He was required to yield the right-of-way to other vehicles lawfully within the intersection.

Stone, on the other hand, if the light had turned green when he had entered the intersection, was obliged to yield the right-of-way nevertheless to all other vehicles lawfully within the intersection.

A further statute required Vender, intending to make a left turn within the intersection, to yield the right-of-way to vehicles coming from the opposite direction. Section 61-8-340, MCA, provides:

> 61-8-340. Vehicle turning left at intersection. The driver of the vehicle within an intersection intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but said driver, having so yielded and having given a signal when and as required by this chapter, may make such left turn, and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right-of-way to the vehicle making the left turn. (Emphasis added.)

When Art Vender entered the intersection driving south, he was faced with at least four vehicles also entering the intersection from the opposite direction, three of which were proceeding straight north. Because Vender intended to turn to the left, it was his duty under § 61-8-340, to yield the right-of-way to those vehicles in the intersection or approaching so closely so as to be

7

an immediate hazard. All of this, under the facts of this case, Art Vender properly performed.

Moreover, Art Vender had properly stopped his automobile in the intersection under the facts of this case. Section 61-8-354, MCA, provides:

> 61-8-354. <u>Stopping, standing or parking prohibited in specified places-exceptions.</u> (1) No person shall stop . . . a vehicle, except . . . (2) . . . <u>when necessary to avoid conflict with other traffic</u> . . . (Emphasis added.)

Vender entered the intersection and intended to make a left - hand turn, which he had a right to do. He was prevented from proceeding immediately through his left-hand turn by the approach of vehicles coming in the opposite direction on Twentieth Street. It was "necessary to avoid conflict with other traffic" that he stop in the intersection. He was, therefore, lawfully in the intersection when he was struck broadside by the oncoming vehicle driven by Kevin Stone. Vender testified that he did not see Stone before the collision or his vehicle, but Vender's right to stop in the intersection in the circumstances is undoubted under the law.

> The driver of an automobile which enters an intersection on the green light ordinarily is entitled to continue until he clears the intersection, even though the green changes to amber and the amber to red before he completes the crossing, while traffic awaiting on intersecting streets the change of lights must ascertain whether the intersection is clear before starting to cross.

Blashfield, <u>Automobile Law and Practice</u>, Vol. 3, p. 96, § 114.42 (1965).

Even if Stone had a green light in his favor as he entered the intersection, he was still required under § 61-8-207, MCA, to yield

the right-of-way to other vehicles lawfully within the intersection. As the Washington Court said in Lanegan v. Crauford (Wash. 1956), 304 P.2d 953, 955:

> A green light is not a command to go, but only a limited permission to pass, having due regard for those already lawfully in the intersection. (Citing cases.)
>
> Vehicles rightfully in a light-controlled intersection have a reasonable opportunity to clear the intersection. (Citing cases.)
>
> Such is the imperative command of the statute, Laws of 1951, Ch. 56, § 3, p. 165, R.C.W. 46.60.230:
>
>> . . . But vehicular traffic, including vehicles turning right or left, shall yield the right of way to other vehicles and to pedestrians lawfully in the intersection or an adjacent crosswalk at the time such signal is exhibited . . .

304 P.2d at 955.

Stone's duty to keep a lookout as he approached the intersection and entered it is well settled in Montana law. His duty to keep a lookout implied his duty to see what was in plain view, and what should be seen in the exercise of reasonable care. Johnson v. Herring (1931), 89 Mont. 156, 295 P. 1100. A driver must look not only straight ahead but laterally ahead, Autio v. Miller (1932), 92 Mont. 150, 11 P.2d 1039. A person is presumed to see, and therefore to know, that which he could see by keeping a lookout. McNair v. Berger (1932), 92 Mont. 441, 15 P.2d 834; Marinkovich v. Tierney (1932), 93 Mont. 72, 17 P.2d 93.

The failure of a motorist approaching a controlled intersection to see what was plainly visible or obviously apparent makes him chargeable for failure to see what he should have seen

had he been in the exercise of reasonable care. Drury v. Palmer (Idaho 1962), 375 P.2d 125; Hughes v. Hooper (Utah 1967), 431 P.2d 983.

It is not to be doubted that the primary duty of lookout in a light-controlled intersection rests upon the disfavored driver, but this does not excuse the favored driver from his duty of reasonable care in approaching and entering the intersection, including the duty owing here to other traffic. In this case, Stone contends that Vender failed to keep a lookout because he didn't see Stone before the collision. Granting this, Vender's lack of lookout was not a proximate cause of the accident because up to and at the moment of collision, his vehicle was in a helpless position as far as approaching traffic from Stone's direction is concerned.

The evidence is clear that Stone not only failed to keep a lookout, but failed to obey the basic speed rule contained in § 61-8-303, MCA. That rule is stated as follows:

> 61-8-303. Speed restrictions--basic rule. (1) A person operating or driving a vehicle . . . on a public highway of this state shall drive it in a careful and prudent manner, and at a rate of speed no greater than is reasonable and proper under the conditions existing at the point of operation,. . . and he shall drive it so as not to unduly or unreasonably endanger the life, limb, property, or other rights of a person entitled to the use of the street or highway.
>
> . . .
>
> (5) The driver of a vehicle shall, consistent with subsection (1), drive at an appropriate reduced speed when approaching and crossing an intersection . . . and when a special hazard exists with respect to pedestrians

or other traffic or by reason of weather or highway conditions.

The foregoing applicable statutes cannot be construed in any other way but that Vender was lawfully in the intersection at the time that his vehicle was struck by the Kevin Stone vehicle, and that Kevin Stone alone was driving negligently, if not recklesslessly, to cause the collision.

Only in exceptional circumstances will a favored driver be in fault for a collision in a light-controlled intersection, when the favored driver could have avoided the accident by exercising the slightest observation and care. Smith v. Regional Transit Authority (La. App. 4, 1990), 559 So.2d 995. When, as here, the facts are undisputed and susceptible of only one inference, questions of fact become a matter of law. We determine that Kevin Stone was solely responsible for the collision which occurred in this case.

It is necessary, therefore, for us to reverse the judgment of the District Court and remand this cause for a new trial on the issue of damages, the liability having been determined as a matter of law.

The second issue raised by the appellants relates to the denial of evidence by the District Court in the first trial on damages issues. The question of admissible testimony arose in the first trial because of discovery complications upon which the District Court ruled to eliminate the evidence. Since we are remanding this cause for a new trial, we assume that proper discovery will be made before the next trial and we have no need,

therefore, to determine the damages questions raised by the second issue of the appellants.

Cause remanded for new trial in the District Court on the issue of damages only.

_John C. Sheehy_
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_William E. Hunt_

_____

_____

_____
Justices

Justice Diane G. Barz dissenting.

I dissent.

A jury found that Art Vender was fifty percent negligent. On appeal we are limited to a determination of whether the verdict is supported by substantial credible evidence. A great deal of evidence indicated that while Vender entered the intersection with a green light, the light may have changed while Vender was stopped in the intersection waiting for four or five northbound cars to go by before he could attempt a left turn.

> The jury was not compelled to believe plaintiff's testimony. The jury viewed the evidence, heard and viewed the witnesses, and entered its verdict. To permit the undoing of this verdict by affirming the trial court decision granting a new trial, would, in the language of Nelson v. Hartman (1982), [199] Mont. [295], 648 P.2d 1176, 1179, 39 St.Rep. 1409, 1412, ". . . create a bench supremacy and sap the vitality of jury verdicts." (Emphasis added.)

Maykuth v. Eaton (1984), 212 Mont. 370, 372-73, 687 P.2d 726, 727.

The jury in the instant case obviously had trouble believing Vender's testimony on liability and damages. The jury verdict should be affirmed.

_____
Justice

Justice Fred J. Weber and Justice R.C. McDonough join in the foregoing dissent of Justice Diane G. Barz.

_____
Justices

13