No.  94-055

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

CHARLES CHAD CHAMBERS, a minor,
through his Guardian Ad Litem,
Linda C. Chambers,

      Plaintiff and Appellant,

-v-

MATTHEW ROBERT PIERSON,

      Defendant and Respondent.

FILED

SEP 20 1994

*Ed Smith*

CLERKOFSUPREMECOURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable Byron L. Robb, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

      Peter M. Kirwan, Kirwan & Barrett, Bozeman, Montana

      For Respondent:

      Gene I. Brown & Steve Reida, Landoe, Brown, Planalp
& Braaksma, Bozeman, Montana

Submitted on Briefs:  June 24, 1994

Decided:  September 20, 1994

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiff Charles Chad Chambers appeals the judgment entered for the defendant in the District Court of the Sixth Judicial District, Park County, pursuant to a jury verdict finding the defendant was not negligent when the truck driven by him struck the plaintiff as he rode his bicycle in the crosswalk in front of defendant's truck. We reverse in part and remand for a new trial.

The issues are restated as follows:

I.   Did the District Court err in refusing to give plaintiff's proposed Instruction No. 26 concerning defendant's standard of care?

II.  Did defense counsel's arguments constitute prejudice and preclude a fair trial?

III. Did the District Court err in refusing to instruct the jury that a child is not held to the same standard of care as an adult?

IV.  Did the District Court err by instructing the jury on the legislative recommendation encouraging equipping every bicycle with a flag?

V.   Did the combination of errors presented in Issues I through IV constitute reversible error?

VI.  Was defendant negligent as a matter of law?

Our decision on Issue I is dispositive of the first five issues in this case. Although Issues II., III., IV. and V. need not be reviewed, Issues III. and IV. are addressed for the benefit of the trial court in a subsequent jury trial. We decline to address Issues II. and V.

On May 22, 1989, g-year-old Charles Chad Chambers (Chad) was riding his bicycle home from Winans School in Livingston where he attended third grade. The defendant, 15-year-old Matthew Robert

2

Pierson (Matt), was driving a truck after school. Matt had been a licensed driver for 12 days. Fourteen-year-old Wolfgang Schwarz (Wolfgang), a classmate of Matt, was a passenger in Matt's truck.

Matt approached the intersection of 5th and Callender streets driving easterly on Callender Street. Chad approached the same intersection riding his bike on the sidewalk on the west side of 5th Street, heading north. The intersection of 5th and Callender streets is controlled by stop signs on both sides of Callender Street.

Chad testified that he slowed down on his bike prior to entering the crosswalk in front of Matt's truck, and when he saw that the truck was stopped at the intersection behind the white crosswalk lines, he increased his speed and proceeded into the crosswalk to cross Callender Street. Matt testified that he stopped at the stop sign and allowed two cars to go by on 5th Street. Both Matt and Wolfgang testified that they did not see Chad approaching the intersection until he was already in the crosswalk approximately in line with the right front end of the truck. At the time Matt saw the bicyclist in the crosswalk, he had already started driving the truck forward, intending to cross the intersection. Before Matt was able to stop the truck again, he hit Chad with the left front end of his truck. Matt admitted that there was nothing obstructing his view of the sidewalk area from which Chad approached the crosswalk.

Chad testified that he tried to swerve to his right to avoid being hit by the truck. However, he and the bike were knocked down

by the impact. Both Matt and Wolfgang got out of the truck to see whether Chad was injured. Although Chad had scraped his arms and elbows, he did not appear to be otherwise injured and again mounted his bike and rode home. After alerting his mother about the accident, Chad was taken to Dr. Priest at the Park Clinic. Dr. Priest treated the visible injuries on Chad's arms.

Although Chad stated that he was **alright** at the scene of the accident, his mother testified that he was crying when he called her after arriving home. Chad testified that, in addition to skinning and bruising both of his arms, his head was injured either by the truck on impact or by hitting the pavement when he was knocked down by the truck. Several days after the accident, Chad saw Dr. Priest for the head injury because he was sleeping a great deal more than normal, had fallen asleep in school and was experiencing severe headaches.

Prior to the accident, Chad had been diagnosed as having Attention Deficit Disorder (ADD), also known as hyperactivity, and he suffered from migraine headaches. There is no dispute among the experts who testified at trial that Chad suffered a concussion as a result of the accident with the truck and that he subsequently suffered post-concussion syndrome. The parties did dispute the question whether Chad suffers from permanent brain damage from a closed-head injury. The symptoms Chad experienced in the several months after the accident included increased sleeping and exacerbated migraine headaches. Chad was also diagnosed with dyslexia in a subsequent examination by a neuropsychologist in

4

connection with this case.

## Issue I.

Did the District Court err in refusing to give plaintiff's Proposed Instruction No. 26 concerning defendant's standard of care?

The District Court refused to give the following instruction proposed by plaintiff to the jury:

INSTRUCTION NO. 26: Montana law provides that drivers of motor vehicles approaching an intersection have a duty to see what is in plain view and what should be seen in the exercise of reasonable care. A driver must look not only straight ahead but laterally ahead. A person is presumed to see, and therefore know, that which he could see by keeping a lookout. The failure of a motorist approaching a controlled intersection to see what was plainly visible or obviously apparent makes him chargeable for failure to see what he should have seen had he been in the exercise of reasonable care.

Plaintiff relies on Vender v. Stone (1990), 245 Mont. 428, 434-45, 802 P.2d 606, 610, and Payne v. Sorenson (1979), 183 Mont. 323, 326, 599 P.2d 362, 365, as a source of the instruction. The District Court agreed that Proposed Instruction No. 26 was an accurate statement of the law in Montana, but nonetheless refused to give the instruction because it was not an instruction in Vender, it was not applicable in this case, there was no question of whether the defendant "bolted out into the intersection without stopping" and because it seemed peremptory. We disagree.

Plaintiff contends that the court's refusal to give Proposed Instruction No. 26 is reversible error because it reflects a "critically important" part of plaintiff's theory of the case. According to counsel for plaintiff, the most important parts of Chad's case were the theories that the defendant had a duty to see

5

Chad when he was in plain view on the sidewalk before entering the crosswalk and that the defendant was presumed to see that which could have been seen by keeping a lookout not only straight ahead, but also laterally ahead, including the sidewalk area next to the crosswalk as he drove through the crosswalk. We agree that the instruction embodies an important part of plaintiff's theory of the case.

Defendant argued the factual issue that Chad was not in plain view and, therefore, the plain view presumption has no application to the facts of this case because Chad could not physically be seen on the sidewalk approaching the crosswalk. He also argued that after he had stopped for the stop sign and let cars pass on 5th Street, his duty was to look straight ahead and not laterally ahead down the sidewalk. Defendant contends that there was no evidence that Chad was in plain view and the only evidence introduced was that Chad was somewhere on a sidewalk traveling on 5th Street on his bicycle towards Callender Street. Neither party in this case has cited Okland v. Wolf (1993), 258 Mont. 35, 40-41, 850 P.2d 302, 306, a recent case of this Court in which we cited Payne with approval as follows:

> Under Montana law, a motorist has a duty to look not only straight ahead but laterally ahead as well and to see that which is in plain sight. Furthermore, a motorist is presumed to see that which he could see by looking, and he will not be permitted to escape the penalty of his negligence by saying that he did not see that which was in plain view. . . . If a motorist does not keep a proper lookout, a jury may find him negligent. (Citations omitted.)

In Okland, the 8-year-old plaintiff lost control of his bicycle and

6

swerved into the street from an alley and collided with a vehicle driven by a 15-year-old boy who had been a licensed driver for approximately one month. Although Okland involved facts from which the jury apportioned negligence equally between the plaintiff and defendant, this Court in part affirmed the jury's finding based on the law as quoted above from Payne and as subsequently restated in Vender.

The record in this case clearly indicates that there was a factual issue as to whether Chad was in plain view. The jury had to determine this key issue of fact and apply the appropriate law to the facts. The jury instructions as given by the court do not cover plaintiff's theory that Chad was in plain view and that Matt had the duty and is presumed to have seen what was plainly visible. It is well established in Montana that a trial court commits reversible error by refusing to instruct the jury on an important part of a party's theory in the case. See, e.g., Smith v. Rorvik (1988), 231 Mont. 85, 93, 751 P.2d. 1053, 1058.

While other instructions properly addressed the elements necessary to establish negligence, none of the instructions addressed the plain view presumption, an essential part of plaintiff's case on which the plaintiff was entitled to have an instruction submitted to the jury. We conclude, therefore, that it was reversible error in this case to refuse to give plaintiff's Proposed Instruction No. 26 because it instructed the jury on the applicable law for plaintiff's theory of the case.

We hold the District Court erred in refusing to give

7

plaintiff's Proposed Instruction No. 26 concerning defendant's standard of care.

Issue II.

Did defense counsel's arguments constitute prejudice and preclude a fair trial?

Plaintiff contends that the failure to give plaintiff's Proposed Instruction No. 26 permitted defense counsel to make highly prejudicial arguments during closing. Our ruling pursuant to Issue I. above reverses the District Court on this proposed jury instruction and makes it unnecessary to address this issue. We therefore decline to further discuss the closing argument.

Issue III.

Did the District Court err in refusing to instruct the jury that a child is not held to the same standard of care as an adult?

We address this issue for the benefit of the District Court in a subsequent trial in this case. Plaintiff maintains that the following instruction was proposed to distinguish between the duty of care for the defendant, which is the same as for an adult licensed driver, and the duty of care for Chad:

INSTRUCTION NO. 32

A child is not held to the same standard of care as an adult.

A child is negligent if he fails to use that degree of care which is ordinarily exercised by children of the same age, intelligence, knowledge and experience under the circumstances then existing.

The **District** Court refused to give the first sentence of the above-quoted instruction because no adults were involved and the instruction could confuse the jury because none of the parties were

8

adults.

Plaintiff contends this was error because defendant is considered an adult in the eyes of the law and Matt is held to the same standard of care as an adult. Defendant counters that the court's refusal was not error because the instructions given, taken together, correctly instruct the jury on the proper standard of care for each party.

The second paragraph of plaintiff's Proposed Instruction No. 32 was given by the District Court and correctly sets forth the standard of care applicable to Chad. In addition, the court gave the following:

INSTRUCTION NO. 13

Montana law provides that a fifteen year old with a valid Montana Driver's license is held to the same standard of care while driving an automobile as an adult in the same circumstances.

Instruction No. 13 correctly instructed the jury on the standard of care for Matt in this case and is more specific and less confusing than the sentence plaintiff argues should have been used.

It is within the discretion of the District Court to decide how to instruct the jury, taking into account theories of the parties, and we will not overturn the court's decision unless the District Court abused its discretion. Hislop v. Cady (1993), 261 Mont. 243, 247, 862 P.2d 388, 390. It is not reversible error to refuse to give an offered instruction unless such refusal affects the substantial rights of a party and thereby prejudices him. If jury instructions when taken as a whole properly state the applicable law, there is no abuse of discretion on the part of the

9

District Court.  Moralli v. Lake County (1992), 255 Mont. 23, 31, 839 P.2d 1287, 1292.  We conclude that the jury was properly instructed as to the standards of care to be applied to each party in this case.  We further conclude that plaintiff was not prejudiced by the refusal of the first sentence of plaintiff's Proposed Instruction No. 32.  Plaintiff's counsel was able to counter any possible prejudice by the following quote from his closing argument:

> We have learned from the instructions that a 15 year old with a drivers license is the same as you, the same as me, same as the judge, and must comply with the rules, the standard of care, the requirements of that driving license, and we have seen what those are. . . .
>
> . . .
>
> The Defendant, . . . when he approached that stop sign and stopped, he was obligated to look, he was obligated to see, and he should have, in the exercise of ordinary care, seen Chad Chambers.  But there's more to this than that, because, unlike a 15-year-old-licensed-driver who has the same burden and responsibility that we do, Chad Chambers, under the law, is in a different category.  He's a child, and the law protects children. It protects mine, it protects yours, because the law does not expect those children, that nine year old, to have the same perceptions and understanding and experiences that adults do.  So the standard of care and the requirements of perception that a child has are less. Why is this important?  Well, because you've heard defense counsel raise the argument, "Well, it's a flash of light; we saw Chad Chambers flashing across: it was his fault, not the Defendant's."
>
> And ultimately you're going to be called upon to compare -- first of all to determine whether Chad Chambers was negligent and then compare his negligence, if you find that it exists, to that of the defendant. The bottom line is that -- let me put it in terms of a real simple example.  One of the instructions that was read to you says that if the Plaintiff, Chad Chambers, is negligent, his damages are reduced by the percentage of that negligence.  Let's put it in terms of a hundred dollars.  Under the law, if you decide that after you

10

have considered the evidence that Chad is entitled to a hundred dollars in damages, and you find that he's five percent negligent then you take five bucks away from him. If you find he's fifty percent negligent, fifty dollars disappears, and if you find him more than fifty percent, he's denied his recovery entirely. So it's important to reflect on this different standard of care between a child Chad Chambers' age and an adult in the position of a licensed driver.

We hold the District Court did not abuse its discretion by refusing to instruct the jury that a child is not held to the same standard of care as an adult.

### Issue IV.

Did the District Court err by instructing the jury on the legislative recommendation encouraging equipping every bicycle with a flag?

As in Issue III. above, this issue is addressed for the benefit of the District Court on remand in a subsequent trial.

The District Court gave the following instruction offered by defendant over the objection of counsel for plaintiff:

Every bicycle is encouraged to be equipped with a flag clearly visible from the rear and suspended not less than six feet above the roadway when the bicycle is standing upright. The flag shall be florescent [sic] orange in color.

The source for this instruction is § 61-a-607, MCA. Plaintiff's counsel objected to this instruction on the basis that it creates no duty whatsoever, is merely a statement of the legislature's preference and, as such, is confusing and prejudicial. Moreover, according to plaintiff, this is merely a legislative desire and recommendation and does not have the force of law. Defendant's counsel argued that since the legislature has enacted the statute to encourage flags as safety devices, he was entitled to argue that preference.

11

The following dialogue occurred:

[By Mr. Kirwan] Well, your Honor, I would just like to point out a difference in these statutes. We have in 61-8-607 mandatory type requirements, and then we have this wish list desire as it relates to a flag, and I'll guaranty [sic] if this instruction is given the argument's going to be made that it is a violation of statute, and it's negligent per se, etc., etc., etc., and it is going to create prejudicial and reversible error.

[By Mr. Brown] I guaranty [sic] that won't happen. We won't touch that with a ten foot pole. We won't mention it.

[By Mr. Kirwan] I tell you what, you don't have to say it because the photographs are going to be there, and the photographs show that there is no flag on that bicycle, and I know the argument of counsel, he wouldn't have to say a word, but it's going to be there.

The District Court did not believe the statute could be ignored even if it was just a recommendation and gave the instruction as offered by defendant's counsel. Plaintiff contends this was prejudicial because the jury should not be expected to distinguish the "recommendations" of the legislature from the requirements of the law.

Jury instructions, taken as a whole, must state the relevant law favoring both sides. Moralli, 839 P.2d at 1292. Section 25-7-301(5), MCA, requires the court to instruct the jury in "all matters of law which the court thinks necessary for the jury's information in rendering a verdict." We review a District Court's interpretations of the law to determine whether they are correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603. The instruction pertaining to the bicycle flag is not a matter of law for which the courts must provide proper instructions to the jury: rather, it is a legislative desire. It

12

has no force of law and creates no legal duty.

We hold the District Court erred by instructing the jury that the legislature encourages that every bicycle be equipped with a flag.

## Issue V.

Did the combination of errors presented in Issues I through IV constitute reversible error?

Plaintiff contends that the combination of errors in giving jury instructions as argued in Issues I. through IV. constitute reversible error, even though they may be harmless individually. Pursuant to our holding in Issue I. above, we decline to address this issue.

## Issue VI.

Was defendant negligent as a matter of law?

Plaintiff's final argument contends that the District Court erred by not finding defendant negligent as a matter of law based on the defendant's duty to look up the sidewalk and see what was in plain view within a reasonable time before proceeding across the intersection. Defendant counters that there were numerous factual issues in this case which precluded the court from finding negligence as a matter of law.

We agree with defendant. The critical factual issue here is whether Chad, on his bicycle, was in plain view of Matt. The District Court could not declare Matt was negligent as a matter of law because the jury was chargeable with determining the key issue on which a finding of negligence depended. A determination of negligence by the trial court is appropriate only where the court

13

is able to see from the undisputed facts that the injury was proximately caused by defendant's actions. Where conflicting evidence is presented at trial, as in the present case, issues of negligence and proximate causation must be decided by the jury under appropriate instructions. Payne, 9 P.2d at 365.

We hold the District Court correctly refused to direct a finding of negligence as a matter of law.

Affirmed in part, reversed in part and remanded for a new trial.

_____
Justice

We Concur:

_____
John Conway Harrison

_____
Paula M. Nan

_____

_____
William E Hunt
Justices

14

September 20, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Peter M. Kirwan
KIRWAN & BARRETT, P.C.
P. O. Box 1348
Bozeman, MT 59771-1348

Gene I. Brown & Steve Reida
LANDOE, BROWN, PLANALP & BRAAKSMA, P.C.
P. O. Box One
Bozeman, MT 59771-0001

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy