No. 93-537

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

DOUGLAS E. STEINER,

      Plantiff and Appellant,

-v-

DEPARTMENT OF HIGHWAYS of the
STATE OF MONTANA,

      Defendant and Respondent.

FILED

DEC 23 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:   District Court of the Nineteenth Judicial District,
               In and for the County of Lincoln,
               The Honorable Robert S. Keller, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Roger M. Sullivan and Allan M. McGarvey, McGarvey,
          Heberling, Sullivan & McGarvey, Kalispell, Montana

      For Respondent:

          Dana L. Christensen and Debra D. Parker, Murphy,
          Robinson, Heckathorn & Phillips, Kalispell, Montana


Submitted on Briefs:  October 27, 1994

Decided:  December 23, 1994

Filed:

Clerk

Justice Fred J. Weber delivered the opinion of the Court.

This is an appeal from the District Court of the Nineteenth Judicial District, Lincoln County, which granted judgment for the defendant, Montana Department of Highways, following a nonjury trial. Plaintiff appeals the District Court's Findings of Fact, Conclusions of Law, and Judgment and also the denial of his Motion for Summary Judgment, both concluding that defendant did not owe a duty to plaintiff. We reverse and remand.

The following issues are presented for review:

I. Did the contract between the Federal Highway Administration and the Montana Department of Highways create a nondelegable duty on the part of the Montana Department of Highways to assure that safe scaffolding was used on the Fisher River Bridge Project?

II. Does failure to assure compliance with contractually-imposed safety standards and the Montana Scaffolding Act constitute a breach of duty as a matter of law?

Douglas E. Steiner (Steiner) worked as a laborer on the Fisher River Bridge highway reconstruction project on U.S. Highway 2 between Kalispell and Libby, Montana. He was employed by Frontier West, Inc., a contractor doing bridge construction on the project. On May 15, 1987, Steiner injured his back when he fell from a scaffold structure which was attached to the outside of the bridge being constructed.

The scaffold structure consisted of a series of metal overhang brackets upon which a working "deck" was constructed. The surface

2

of the deck was used to anchor forms for the concrete parapet (retainer wall); it also functioned as a work surface and walkway. In particular it was used as follows: (1) by the laborers in constructing and removing the forms for pouring the concrete retainer wall; (2) as a walkway and work surface during the pouring of the concrete deck; (3) as a work surface to enable the laborers to perform concrete finishing work and repairs to the outside surface of the concrete retaining wall; and (4) as a work surface by both laborers and supervisory personnel from the Montana Department of Highways (MDOH).

The deck extended between 17½ to 24 inches outward from the edge of the parapet and ran for the entire length of the bridge. It was over nine feet above ground for most of its length. There was no guardrail at the outer edge of this narrow deck overhang at any time during the construction project. Steiner fell backwards to the ground from the deck overhang while he was attempting to go around another worker to get a hose. The other worker was kneeling on the working surface outside the parapet wall with his upper body parallel to the parapet and his head near its base as he smoothed out the newly poured concrete retaining wall--a process called "sacking." Steiner claims that he reached for a 2 x 4 piece of wood which he believed to be part of the deck overhang structure, but instead was a loose piece of wood which was not anchored to the structure. He lost his balance and fell backwards to the ground approximately nine feet below the overhang.

The Fisher River Bridge was part of a federally funded highway

3

construction project, governed by an agreement between MDOH and the Federal Highway Administration (FHWA). It was designated as a "Certification Acceptance" project, a classification which applied to this project but does not apply to all such construction projects receiving federal funding. Because it was a Certification Acceptance project, it had to be performed pursuant to the terms of the Certification Acceptance Agreement, which is a complex contract incorporating, among other things, the MDOH Construction Manual and a document entitled <u>Standard Specifications for Road and Bridge Construction</u>.

For purposes of our review, it is undisputed that there was no guardrail on the outside of the overhang work surface and that MDOH did not issue any verbal or written notice, stop-work order, or take any other action to assure that a guardrail was installed on the deck overhang.

### Issue I

Did the contract between FHWA and MDOH create a nondelegable duty on the part of MDOH to assure that safe scaffolding was used on the Fisher River Bridge Project?

Steiner contends that the contract between FHWA and MDOH imposed a nondelegable duty upon MDOH concerning the Fisher River Bridge project. This duty on the part of MDOH, according to Steiner, required MDOH to assure the use of appropriate safety devices on the project, including safe scaffolding. Steiner contends that the District Court committed reversible error by not granting his summary judgment motion recognizing MDOH's nondelegable safety duties arising from contract and also by not

4

recognizing these nondelegable safety duties in its Conclusions of Law and Judgment.

The contract between FHWA and MDOH, which was applicable to the Fisher River Bridge construction project, required that the construction be performed pursuant to the terms of the Certification Acceptance Agreement. As stated above, the Certification Acceptance Agreement incorporates by reference the MDOH Construction Manual and a document entitled Standard Specifications for Road and Bridge Construction (1981 ed. adopted by MDOH). It also incorporates by reference certain other state and federal safety regulations. Not all highway contracts are governed by the Certification Acceptance Agreement; its terms apply only to highway contracts undertaken pursuant to a process referred to as "Certification Acceptance." See 23 C.F.R. § 640.101-640.117 (1994). As a contract which must be performed pursuant to the Certification Acceptance Agreement, the contract between FHWA and MDOH therefore incorporates language from the MDOH Construction Manual, including the following quote from § 14.03, providing in pertinent part:

> . . . [The Montana] Department of Highways would be responsible, as contracting agency, to monitor the Construction Safety Act on all projects in order to assure that correct requirements are met.
>
> The Department of Highways policy in regard to OSHA monitoring and violation reporting is as listed:
>
> 1. The contractor has direct responsibility for compliance by law and also as a contractual obligation under Section VIII of PR 1273 included in all federal aid contracts.
>
> 2. Department of Highways' field personnel have

5

responsibility to monitor the contractor's compliance. The basic guide for monitoring is the orange booklet titled "Construction Industry - OSHA Safety and Health Regulation Digest." Department field personnel do not have the authority to enforce, direct the contractor to perform specific actions, or to report violations directly to enforcement agencies except in cases of extreme emergency.

3. Procedures for reporting apparent violations are (a) Verbal notification to contractor's field supervisor, (b) Written notification if not corrected within reasonable time, (c) Notification of higher department authority if written notice does not produce correction in a reasonable time. (Emphasis supplied.)

In the Standard Specifications for Road and Bridge Construction, incorporated by reference as stated above, the project engineer is given authority to suspend the work wholly or in part if the contractor fails to correct unsafe conditions.

All Certification Acceptance projects for which the State of Montana negotiates a contract with a subcontractor must include a provision specifically permitting MDOH to determine the reasonably necessary safety devices and protective equipment. Therefore, the Fisher River Bridge Contract and Bond, the contract between MDOH and Frontier West, Inc., included the following contract provision:

The contractor shall provide all safeguards, safety devices and protective equipment and take any other needed actions, on his own responsibility, or as the State highway department contracting officer may determine, reasonably necessary to protect the life and health of employees on the job and the safety of the public and to protect property in connection with the performance of the work covered by the contract. (Emphasis supplied.)

Form PR-1273, FHWA Required Contract Provisions Federal-Aid Construction Contracts ¶ VIII. The guide used by MDOH for monitoring the contractor's compliance with applicable laws is a booklet entitled Construction Industry Digest (OSHA 2202 (Revised)

6

1991), otherwise referred to as the "orange booklet." The orange booklet at § 56 includes the following pertinent safety standards for scaffolds:

> c. Guardrails and toeboards shall be installed on all open sides and ends of platforms more than 10 feet above the ground or floor . . .. Scaffolds 4 feet to 10 feet in height, having a minimum dimension in either direction of less than 45 inches, shall have standard guardrails installed on all open sides and ends of the platform.

Steiner argues that, although contracts governed by the Certification Acceptance Agreement impose some safety-related nondelegable duties upon MDOH, the Certification Acceptance Agreement did not require MDOH to be responsible for all safety-related activity on the Fisher River Bridge project. Specific duties imposed by the Certification Acceptance Agreement include the responsibility to inspect, monitor and take corrective action to assure the presence of "safeguards, safety devices, and protective equipment reasonably necessary to protect the life and health of employees on the job." Thus, although the contractor must provide safeguards, safety devices and equipment that are reasonably necessary for employee safety, according to the contract between MDOH and Frontier West, Inc., MDOH must monitor the project and assure the subcontractor's compliance.

Montana law has long recognized that contractual obligations are nondelegable. See, e.g., Ulmen v. Schwieger (1932), 92 Mont. 321, 345, 12 P.2d 856, 859. Prior to the 1972 Montana Constitution revisions, however, the benefits of that doctrine applied only to third persons and did not apply to employees of subcontractors. Stepanek v. Kober Construction (1981), 191 Mont. 430, 434, 625 P.2d

7

51, 53. See also Nave v. Harlan Jones Drilling (1992), 252 Mont. 199, 827 P.2d 1239. As discussed in Stepanek, 625 P.2d at 54-55, Art. II, Section 16 of the Montana Constitution now provides in pertinent part:

> Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character. No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provided coverage under the Workmen's Compensation Laws of this state. . . .

Thus, the distinction discussed in Stepanek between third parties and employees of subcontractors no longer applies in Montana and employees of subcontractors may sue the general contractor for injuries received on the job if the general contractor has a nondelegable duty to the subcontractor's employees, notwithstanding the fact that the employee's exclusive remedies against the employer are covered under the Workers' Compensation Act. Because the duties imposed on MDOH by its contract with FHWA are nondelegable, it cannot avoid liability by attempting to shift responsibility for those duties to someone else. Nave, 827 P.2d at 1241.

MDOH contends that it had the duty to monitor safety, including the requirements of the Montana Scaffolding Act, but the primary responsibility for assuring safety on the project was with Steiner's employer as transferred to the employer pursuant to the contract between MDOH and Frontier West, Inc. The District Court concluded that the contract between FHWA and MDOH contained no specific provision which obligated MDOH for initiating, maintaining

8

and supervising safety precautions and programs. The court further concluded that absent such a provision, there was no nondelegable duty assumed by the State to provide Steiner with a safe place to work, or to assume the safety duties under the Montana Scaffolding Act and the Safe Place to Work Act. We disagree.

We review the trial court's conclusions of law to determine if they are correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603. Under the terms of the Certification Acceptance Agreement signed in 1976 by MDOH and applicable to the Fisher River Bridge construction project, MDOH assumed certain nondelegable duties, including the duty to monitor and to assure compliance with certain state and federal laws. Although MDOH's field personnel cannot enforce safety compliance except in emergency situations, its duty to monitor is not a duty without a means of enforcement. Procedures for enforcement are specifically set forth in the Construction Manual. These procedures do not allow MDOH as general contractor to specify the manner of compliance, however, except in limited circumstances. This decision is generally left to the subcontractor.

Regardless of the duties owed by Frontier West, Inc. or others to Steiner, however, MDOH retained the duty to provide Steiner with a safe place to work. We conclude that MDOH had a nondelegable duty based on its contract with FHWA whereby it assumed nondelegable safety responsibilities. We further conclude that the duties assumed by MDOH included both monitoring the construction project to determine whether the subcontractor complied with safety

9

laws and also assuring that Frontier West, Inc. complied with such laws.

We hold the District Court erred in concluding MDOH owed no nondelegable duty to Steiner to assure that safe scaffolding was used on the Fisher River Bridge project.

## Issue II

Do the undisputed facts establish a breach of contractually-imposed duty to monitor and assure safety compliance as a matter of law?

According to our conclusion in Issue I above, MDOH was required to monitor the Fisher River Bridge project and assure that it complied with safety laws. MDOH was thus obligated to inspect the scaffolding structure, note that it was being used as a work surface and to determine whether it needed a guardrail in order to comply with the Montana Scaffolding Act and the Construction Manual incorporated by reference in the FHWA-MDOH contract, which required guardrails for all scaffolding less than 45 inches wide and 4 feet or more above ground. If the scaffolding structure did not comply, as the undisputed facts demonstrate it did not, MDOH was obligated to take the procedures as outlined in the Construction Manual to assure compliance on the part of the subcontractor, Frontier West, Inc. If Frontier West, Inc. failed to correct the unsafe condition, then the project engineer had the authority to suspend the work wholly or in part until Frontier West, Inc.'s scaffolding met the requirements of the Montana Scaffolding Act and the Construction Manual incorporated by reference into the Certification Acceptance Agreement.

10

The District Court also concluded that the absence of a guardrail on the outer edge of the scaffolding on the Fisher River Bridge project did not proximately cause Steiner's injuries. We have previously stated that the deck overhang constituting the scaffolding on the Fisher River Bridge construction project did not meet the requirements of the Certification Acceptance Agreement, which incorporated by reference the Construction Manual and state and federal laws, including the Montana Scaffolding Act. Steiner contends that this failure to comply with the Montana Scaffolding Act is reversible error and that the District Court should have recognized MDOH's safety duties and awarded summary judgment in his favor because the Act precludes the affirmative defenses of comparative negligence and assumption of the risk. We agree.

The term "scaffolding" includes any device utilized by workmen to allow them to work where a fall might result in serious injury. Mydlarz v. Palmer/Duncan Construction Co. (1984), 209 Mont. 325, 338, 682 P.2d 695, 702. Clearly, the deck on the outer side of the parapet in this case constitutes scaffolding according to the liberal construction to be given that definition as set forth in Mydlarz. Thus, the breach of a contractual duty to assure that the subcontractor has provided appropriate scaffolding invokes the provisions of the Scaffolding Act.

In Pollard v. Todd (1966), 148 Mont. 171, 179-80, 418 P.2d 869, 873, this Court held as follows:

> We hold that the purpose of [the Scaffolding Act] is to supplement the protection of the common law by providing criminal sanctions and imposing an absolute statutory duty upon the owners of real estate to protect workmen and others

11

from the extraordinary hazards associated with scaffolds. The mandatory nature of the statute forecloses the common-law defenses of assumption of the risk, contributory negligence, and negligence of a fellow servant. We have not decided that liability becomes fixed upon the showing of a scaffold-associated injury. A defendant may escape liability upon proof that there was no violation of statute or that the violation was not the proximate cause of the injury.

A breach of the absolute duty to provide proper scaffolding is negligence per se. Pollard, 418 P.2d at 873. In this case, the District Court determined that Steiner was contributorily negligent, that his negligence was gross negligence and that his gross negligence was more than 50 percent of the total negligence. According to this Court's decision in Pollard, the contributory negligence defense is not available to MDOH. We conclude that failure to comply with the provisions of the Montana Scaffolding Act was negligence per se on the part of MDOH.

However, liability does not become fixed upon a showing of negligence per se; there must be a determination of whether the violation was the proximate cause of Steiner's injuries. The District Court concluded that the acts or omissions of MDOH were not the proximate cause of Steiner's injuries, based on the following findings and conclusions:

> [Finding of Fact No.] 20. The Plaintiff could have gone off the bridge and down the bank to get the pump; all witnesses who were asked testified that William Phelan, the Frontier-West superintendent on the Fisher River Bridge project, would not tolerate delay, and as Carranza put it, if Plaintiff had gone down to the river, . . . by the time he got back up to the top of the bridge, he would have been fired. Nevertheless, once Plaintiff saw where the hose was, he could have easily climbed back over the parapet to the bridge, gone down below his brother and Carranza, climbed back over the parapet to the overhang and gotten the hose; as it was, he could not have attempted to perform a relatively simpl[e] task in a more complicated or dangerous manner than he did.

12

[Finding of Fact No.] 22. The overhang extended the entire length of the bridge, on both sides, so there were places where the overhang may have been higher than ten feet above the ground; all who testified were comfortable with the height, and the Court finds that at no point did the height present any peculiar risk or unusual danger.

[Finding of Fact No.] 25. There was no evidence that a guardrail would have made any difference in this instance; there was no evidence that the lack of a guardrail was a proximate cause of the Plaintiff's injury.

[Conclusion of Law No.] 1. . . . [A] nondelegable duty based on contract was not assumed by the State, to provide the Plaintiff with a safe place to work, or to assume the safety duties under the Montana Scaffolding Act. Such a contractual provision is also a prerequisite to finding liability on the basis of control by the general contractor. . . .

[Conclusion of Law No.] 2. There was nothing inherently or intrinsically dangerous about getting the pump and hose, certainly not by walking around, and not even if he had leaned over the overhang to get the hose. Attempting to walk around Gus Steiner and Leo Carranza, unnecessarily, was negligence, and the manner in which Plaintiff got around Leo Carranza was gross negligence; and going off that overhang backwards in the manner that Plaintiff did would constitute a "dangerous activity," but not one that gives him an exception with respect to the Defendant.

[Conclusion of Law No.] 3. There was a guardrail there, the parapet. If a guardrail had been erected at the edge of the overhang, as Plaintiff suggests, Carranza would have filled the space, causing Plaintiff to go around.

[Conclusion of Law No.] 4. That disposes of the Scaffolding Act, the Safe Place to Work Act and the Non-delegable Duties. Plaintiff also sued on the basis of negligence. Apart from a lack of duty, the negligence of Plaintiff was more than 50% of any other negligence.

The guardrail referred to by the District Court in Conclusion No. 3 is not a guardrail at the outside of the overhang, as contemplated and required by the documents incorporated into the Certification Acceptance Agreement between FHWA and MDOH. The overhang, which was less than 45 inches wide, was located on the outer side of the parapet and did not have a guardrail to protect

13

workers from falling off the edge of the deck. To assure safety compliance, the only time it is not necessary to erect a guardrail is when the overhang is 45 inches or more wide or the drop to the surface below is less than four feet.

We conclude that a guardrail was required on the deck overhang under the Montana Scaffolding Act. We further conclude that a review of the District Court findings and conclusions establishes the presence of proximate cause.

We hold the District Court erred in concluding there was no breach of duty and that MDOH's acts or omissions did not constitute proximate cause.

Reversed and remanded to the District Court for a determination of damages.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

14