NO.  94-029

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

RUSSELL B. GIBBY,

     Plaintiff & Respondent,

  V.

NORANDA  MINERALS  CORPORATION,

     Defendant & Appellant.



FILED

OCT 16 1995

Ed S____
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John McCarvel, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

        Dana Christensen, Murphy, Robinson, Heckathorn &
Phillips, Kalispell, Montana; Richard Ranney,
Williams & Ranney, Missoula, Montana

     For Respondent:

        Tom L. Lewis, Andrew D. Huppert, Lewis, Huppert &
Slovak, Great Falls, Montana


             Submitted on Briefs:  June 15, 1995

                   Decided:  October 16, 1995

Filed:

              Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Appellant, Noranda Minerals Corporation appeals from a jury verdict in favor of the plaintiff, Russell Gibby, and trial court orders from the Eighth Judicial District Court, Cascade County. We affirm.

We consider the following issues to be dispositive;

1. Did the District Court err in concluding that Noranda Minerals Corporation had a nondelegable duty to ensure safety at the Libby Adit?

2. Did the District Court err in instructing the jury that Noranda Minerals Corporation had a nondelegable duty to provide Russell Gibby a safe place to work under the Montana Safe Place to Work statute rather than leave this issue to the jury as a question of fact?

3. Did the District Court err in instructing the jury that Noranda Minerals Corporation had a nondelegable duty to follow safety standards promulgated under the authority of the Mine Safety and Health Act (MSHA), 30 U.S.C., § 801, and that violation of this standard was evidence of negligence?

4. Did the District Court err in concluding there was sufficient evidence to support the jury's verdict that Noranda Minerals Corporation was negligent and that Noranda's negligence was a proximate cause of Russell Gibby's damages?

## FACTS

In 1988, Noranda Minerals Corporation (Noranda) and Montana Reserves Company entered into a Mining Venture agreement for the

2

purpose of acquiring property and developing mining facilities in the Cabinet Mountains of Northwest Montana. Noranda maintained a 55% interest in the ownership of the venture and was designated manager of operations. The venture agreement allowed Noranda to contract out the work of excavating tunnels.

Gilbert Corporation of Delaware, Inc. and the Dynatech Mining Company formed a joint venture to bid on one of Noranda's excavating projects. Gilbert-Dynatech (Gilbert) was hired by Noranda to drive an exploration tunnel into the side of the Cabinet Mountains (the Libby Adit). Noranda and Gilbert entered a "Purchase Order Agreement MP 11001 for the Underground Evaluation of Montana Project Montanore" (the POA).

Plaintiff and respondent, Russell Gibby (Gibby), filed this action after injuring his back while working on the Libby Adit. Gibby was employed by Gilbert in August 1989 as a shift superintendent. On September 12, 1990, Gibby was using a hand held jack-hammer, a type of drill which was known to hang up on fractured rock and loose debris. Gibby injured his back while pulling this hand-operated rock drill out of an anchor hole. Gibby sought and received workers' compensation benefits through Gilbert. He then brought this action against Noranda in tort for his injuries.

Noranda filed an answer generally denying all allegations contained in Gibby's complaint in April 1992. In July 1993, Noranda filed a motion for summary judgment on the grounds that Noranda had either delegated or discharged all duties to provide the plaintiff a safe place to work. This motion was denied in October 1993.

3

Trial was held on October 25, 1991, and the jury returned a verdict in favor of Gibby for $1.3 million.

Noranda appeals the pre-trial denial of the motion for summary judgment, the denial of the motions for a judgment as matter of law, to alter or amend the judgment or for a new trial, and the District Court's jury instructions.

<u>ISSUE 1</u>

Did the District Court err in concluding that Noranda Minerals Corporation had a nondelegable duty to ensure safety at the Libby Adit?

The question of whether a duty exists is a question of law. Therefore, when reviewing a District Court's conclusions we must determine whether the interpretation of the law was correct. In re Marriage of Barnard (1994), 264 Mont. 103, 106, 870 P.2d 91, 93, (citing In re Marriage of Burris (1993), 258 Mont. 265, 269, 852 P.2d 616, 619).

Montana recognizes the general rule that owners or general contractors of a construction project will not be held liable for injuries to the subcontractor's employees. Shannon v. Howard S. Wright Construction Co. (1979), 181 Mont. 269, 593 P.2d. 438. However, the general rule has become the subject to a "catalog" of exceptions. <u>Shannon,</u> 593 P.2d at 441 (citing Wells v. Thill (1969), 153 Mont. 28, 33, 452 P.2d 1015, 1017-18). One of these exceptions arises out of contracts, because Montana has long recognized that certain contractual obligations are nondelegable. See, e.g. Ulman v. Schweiger (1932), 92 Mont. 331, 347, 12 P.2d 856, 859.

4

In 1979 we held that an owner or general contractor could be held liable for the subcontractor's employee's injuries. Shannon, 593 P.2d. 438. In that case, we found that the owner and the general contractor could be held liable given evidence of owner control over the subcontractor's workplace environment. Shannon, 593 P.2d at 444. In 1981, we reaffirmed this holding and held that a nondelegable duty under Montana's Safe Place to Work statute could arise out of a contract. Stepanek v. Kober Construction (1981), 191 Mont. 430, 625 P.2d 51. In Stepanek general contractor had assumed a nondelegable duty to a subcontractor when it contractually agreed to maintain and supervise job safety. Steuanek, 625 P.2d at 53.

Following Stepanek, in 1994, we found the Montana Department of Highways (MDOH) held a nondelegable duty of safety to the employees of a subcontractor. Steiner v. Department of Highways (1994), 269 Mont. 270, 887 P.2d 1228. In that case, a contract with the Federal Highway Administration required MDOH to monitor a highway project and assure compliance with safety regulations. Subsequently, we held that the provisions of the contract had created a nondelegable duty to provide a safe place to work for the employees of a subcontractor. Steiner, 887 P.2d at 1232.

In the instant case, the District Court looked at the contracts Noranda had signed in connection with the Libby Adit project. The record shows, first, the terms of the joint venture agreement with Mineral Reserves Company designate Noranda as the majority owner and manager of operations. Second, under the terms of the Purchase Order Agreement (POA) with Gilbert, Noranda had

5

retained supervisory authority over Gilbert's employees and the methods of operations, including employee safety. The POA provides a protracted list of provisions detailing the balance of power between Noranda and Gilbert. The POA gives Noranda the authority **to:**

a) Interpret the agreement and define intent and meaning and judge its performance,

b) make decisions on all matters relating to the execution and progress of the work,

c) stop the work whenever in Noranda's opinion such stoppage may be necessary,

d) order the issuance of reports, data and other information as deemed necessary,

e) order Gilbert-Dynatec employee's attendance at meetings and request assistance and cooperation on matters pertaining to the project,

f) perform safety inspection at the work site at any time,

g) remove from the job any subcontractor whose work did not meet Noranda's approval,

h) make changes by altering, adding to or deducting from the work,

i) order and direct Gilbert-Dynatec to increase or improve the plant or equipment, improve methods, increase and employ additional force or to perform night work or overtime work when Noranda deemed any of Gilbert-Dynatec's methods to be unsafe, inefficient or inadequate, or should Noranda deem that Gilbert-Dynatec was not proceeding with the work with sufficient diligence,

j) prevent the removal of any equipment form the job site without prior approval,

k) order Gilbert-Dynatec to expedite the work, work overtime, add additional shifts, employ additional men or provide additional equipment in the event that Gilbert-Dynatec fails to complete any part of the work in the time specified in the construction schedule,

l) stop the work or give whatever instruction were necessary to correct conditions which Noranda deemed a threat to the safety of life or the safety of any part of the work or joining property or if any emergency arose which affected or threatened to affect the safety of life or the safety of any part of the work or any adjoining property and then determine whether Gilbert-Dynatec was entitled to any extension of time or extra compensation due to the delay,

m) inspect the work and progress thereof,

n) order the removal and re-execution of all work which failed to conform to the agreement,

6

o) take possession of and use any completed or partially completed portions of the work, not withstanding that the period of time for completing may not have expired,

p) accelerate the work, delete portions of the work and/or use Noranda's own forces or employ other contractors to correct any portion of the work which Noranda deemed improperly performed,

q) terminate the work in whole or in part for Noranda's convenience at any time by written notice,

r) require an organized and effective safety program at every location where work was performed, and

s) monitor Gilbert-Dynatec's performance, including safety and health violations, conduct unannounced periodic inspection with emphasis on safety and health and halt any/all work performed at the construction site or area until employees practices are changed or physical hazards were corrected.

In addition to this contractual grant of authority testimony offered at trial reflects that this authority was then exercised extensively at the job site. In considering both the contracts and Noranda's exercise of authority there is a clear indication of "actual control" arising out of a contract. Steoanek, 625 P.2d at 55.

Because Noranda exercised the requisite control, we hold that the District Court's conclusion that Noranda had retained control over the Libby Adit project and subsequently owed a nondelegable duty of safety to the respondent, was a correct interpretation of the law.

## ISSUE 2

Did the District Court err in instructing the jury that Noranda had a nondelegable duty to provide Russell Gibby a safe place to work as under the Montana Safe Place to Work statute rather than leave this issue to the jury as a question of fact?

The District Court has discretion over jury instructions and we will not overturn a lower court's decision absent an abuse of

7

discretion. Chambers v. Pierson (1994), 266 Mont. 436, 880 P.2d 1350. When examining whether jury instructions were properly given or refused, we must consider the jury instructions in their entirety and in connection with the other instructions given and the evidence introduced at trial. Feller v. Fox (1989), 237 Mont. 150, 772 P.2d 842.

In this case Noranda disputes the District Court's Jury Instruction 16A, which read as follows:

> As a matter of law Noranda Minerals Corporation had a nondelegable duty to provide Russell Gibby a reasonably safe place to work. This nondelegable duty required:
> (1) that Noranda furnish a place of employment that is reasonably safe for all persons working in the mine;
> (2) that Noranda adopt and use practices, **means,** method, operations and processes that were reasonable adequate to render the place of employment safe; and
> (3) that Noranda did any other thing reasonably necessary to protect the life, health and safety of Gilbert-Dynatec employees working in the mine.

This instruction contains the provisions of Montana Safe Place to Work statute, § 50-71-201, MCA, which reads:

> **Employer to provide safe workplace and to purchase, furnish, and require use of health and safety items -- safe practices.** Each employer shall:
> (1) furnish a place of employment that is safe for each of his employees;
> (2) with the exception of footwear, purchase, furnish, and require the use of health and safety devices, safeguards, protective safety clothing, or other health and safety items, including but not limited to air masks, hardhats, and protective gloves, that may be required by state or federal law, the employer, or the terms of an employment contract, unless the terms of a collective bargaining agreement provide otherwise;
> (3) adopt and use practices, means, methods, operations, and processes that are reasonably adequate to render the place of employment safe; and

> (4) do any other thing reasonably
> necessary to protect the life, health, and
> safety of his employees.

Noranda argues this instruction left the jury with the impression that Noranda was illegally and wrongfully attempting to delegate duties concerning safety in the workplace to Gilbert and furthermore Montana's Safe Place to Work statute does not apply to Noranda because it is an owner, not an "employer."

However, the statute is applicable to Noranda. Following the logic in Shannon, Steoanek, and Steiner, where a nondelegable duty has been created through a contract, the provisions of the Safe Place to Work statute apply. Steoanek, 625 P.2d at 55. As was discussed previously in Issue One, Noranda retained both the right and the duty to control job safety at the Libby Adit. This was a question of law for the court, not a question of fact for the jury. Therefore, Noranda had a nondelegable duty under Montana's Safe Place to Work statute, § 50-71-201, MCA, to provide Russell Gibby with a safe working environment.

Furthermore, we must consider the instructions in their entirety. The legal principle of causation requires a two-tiered analysis. Kitchen Krafters v. Eastside Bank (1990), 242 Mont. 171, 789 P.2d 576. The first tier is a determination of whether the action in question was the "cause-in-fact" of the damages, the second tier requires a determination of whether the actions proximately caused the damages. Kitchen Krafters, 789 P.2d at 574. The District Court concluded that it properly instructed the jury that Noranda's conduct was a "cause-in-fact" of Gibby's injuries "if it was a material element and substantial factor in bringing

9

about the injuries." An instruction on Montana's Safe Place to Work provides the jury with a "cause-in-fact" instruction, this does not alleviate the jury's duty to find Noranda's actions (or inaction) as the proximate cause of Gibby's injuries.

Therefore, we do not find reversible error upon review of the jury instructions. The District Court adequately instructed the jury on the applicable law, we affirm the District Court's Instruction 16A.

<u>ISSUE 3</u>

Did the District Court err in instructing the jury that Noranda had a nondelegable duty to follow safety standards promulgated under the authority of the Mine Safety and Health Act, (MSHA), 30 U.S.C., § 801, and that violation of this standard was evidence of negligence?

The District Court has discretion over jury instructions and we will not overturn a lower court's decision absent abuse of discretion. <u>Chambers,</u> 880 P.2d 1350. Instruction 16B read as follows:

> The purpose of the Federal Mining Safety and Health Act ("MSHA") is the protection of life, the promotion of health and safety, and the prevention of accidents. Under MSHA, Noranda had the nondelegable duty to:
> (1) correct hazardous conditions at the mine (section 57.3200);
> (2) provide experienced persons to examine ground conditions, haulage ways, travel ways, and surface areas both prior to commencement of work and periodically during performance of work in the mine (section 57.3401);
> (3) inspect equipment and correct defects in the equipment, machinery, and tools that affect safety to prevent the creation of hazards to persons working in the mine (section 57.141000);
> (4) prohibit use of machinery, equipment, and tools beyond the design capacity intended by the manufacturer,

where such use may create a hazard to persons (section 57.14205);

(5) provide a competent person designated to examine each working place at least once each shift for conditions which may adversely affect safety or health and initiate appropriate action to correct such conditions (section 57.18002); and

(6) initiate appropriate action to correct such conditions (section 57.18002).

In Stepanek we concluded that a violation of federal regulations intended to protect the plaintiff could be considered by the trier of fact as evidence of negligence. Stewanek, 625 P.2d at 56. In this case Instruction 16B sets forth the nondelegable duties any "operator" of a mining operation has under the Federal Mine Safety and Health Act. The code defines an operator as:

> [an] **owner**, lessee, or other person who operates, controls, or supervises a coal or other mine or any independent contractor performing services or construction at such mine; 30 U.S.C. § 802(d).

This was then read in conjunction with Instruction 16C which stated: "Failure to discharge nondelegable duties imposed by MSHA is evidence of negligence in Montana." Following Stepanek, the jury could consider a violation of the Mine Safety and Health Act as evidence when determining negligence.

We hold that the instructions were correctly presented to the jury, and there was no abuse of discretion in giving Instructions 16B and 16C, and we therefore affirm the District Court in giving those instructions.

11

Did the District Court err in concluding there was sufficient evidence to support the jury's verdict that Noranda was negligent and that Noranda's negligence was a proximate cause of the plaintiff, Russell Gibby's damages?

"[T]his court will affirm the verdict of a jury if there is substantial credible evidence on the record to support the verdict."   Interstate Production Credit Association v. DeSaye (1991), 250 Mont. 320, 322-23,  820 P.2d 1285, 1287.   In a negligence claim there are four elements: duty, breach, cause and damages.   Whitfield v. Therriault Corporation (1987), 229 Mont. 195,  745 P.2d 1126.

We have already held that Noranda owed the respondent a duty to provide a safe work environment,  thus satisfying the first element of negligence.   Beyond this, evidence was introduced to show Noranda had breached this duty in failing to provide the appropriate equipment.   Gibby was injured while using a hand held drill, a drill that was inappropriate for the task.   This evidence satisfies the second element.

The third element of causation breaks down into "cause-in-fact" and proximate cause.   Kitchen Krafters, 789 P.2d at 547.   Again,  we have already held that Noranda could be held legally responsible under the Safe Place to Work statute, the next question is whether this negligence was then the proximate cause of Gibby's injuries.

The District Court's Instruction 17 read as follows:

12

> The defendant's conduct caused the plaintiff's injuries
> if the conduct was a "cause-in-fact" and "proximate
> cause" of the plaintiff's injuries . . . The defendant's
> conduct was a "proximate cause" of the plaintiff's
> injuries if it appears from the facts and circumstances
> surrounding the incident that an ordinarily prudent
> person could have reasonably foreseen that injury or
> damage would be a natural and probable consequence of the
> conduct.

A review of the record supports a finding that Noranda knew of the loose debris at the mine site, knowing of these conditions it was generally known the type of hand held drill Gibby was using would be inappropriate. Therefore, there is substantial credible evidence to support a finding that Noranda's failure to provide the proper equipment could reasonably lead to the type of injury Gibby suffered.

We hold there was substantial credible evidence to support the jury verdict, and no abuse of discretion in the District Court's jury instructions on proximate cause.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

13