JUSTICE NELSON,
concurring in part and dissenting in part.
¶73 I concur in the Court’s decision except as to Olson’s cross-appeal issue (whether the District Court properly denied his motion for partial summary judgment on the issue of contributory negligence), addressed at ¶¶ 55-71 of the Opinion. With regard to that issue, I would reverse and remand with instructions that the verdict as to Olson’s alleged contributory negligence be vacated and that the entire verdict be reinstated without any reduction for contributory negligence.
¶74 Today’s decision is a sea change in the law governing a contractor’s breach of its contractually-assumed, nondelegable duty of safety to employees. This “nondelegable” duty can now be delegated to the very persons that the nondelegable-duty doctrine was designed to protect-injured workers. Today, the Court holds that employees are now responsible for their own safety if “(1) the worker has some reasonable means or opportunity to avoid the hazard without endangering his or her employment; or (2) the subject harm was not a reasonably foreseeable consequence of the contractor’s breach of the nondelegable safety duty.” Opinion, ¶ 69. As a result, it is now possible for the breaching contractor to foist its “nondelegable” duty of safety on the injured employee under the guise of contributory negligence. *20 Under the test the Court adopts, we should now expect to see breaching contractors arguing that the injured employee is responsible for part, if not all, of his or her own injury, notwithstanding that the contractor assumed a duty to supervise and provide for safety in the workplace that, hitherto, was not delegable to any other person or entity. The Court’s unfortunate decision here effectively nullifies the nondelegable-duty doctrine, and it results in a grossly unfair result under the facts and circumstances of this case.
¶75 For three quarters of a century, Montana law has been clear and unambiguous. Where a contractor, by contract, specifically agrees to ensure safety, that duty cannot be “delegated to another so as to relieve [the contractor] of responsibility for its nonperformance.” Ulmen v. Schwieger, 92 Mont. 331, 347, 12 P.2d 856, 859 (1932). To that end, an employer who has assumed a specific duty by contract cannot “evade liability” by imputing to another that which he has agreed to perform. Ulmen, 92 Mont. at 348, 12 P.2d at 860. In Stepanek v. Kober Construction, 191 Mont. 430, 625 P.2d 51 (1981), we held that a general contractor’s nondelegable duty to maintain and supervise job safety extended to employees of a subcontractor. Stepanek, 191 Mont. at 434-38, 625 P.2d at 53-55. We reviewed important public policy concerns, including preventing accidents in the workplace and protecting against the economic costs of injuries. We concluded that the general contractor had a nondelegable duty to provide a safe working environment for the employees of subcontractors. We also determined that the duties of the general contractor mandated by the Montana Safe Place statute, § 50-71-201, MCA, are owed to the employees of a subcontractor if there is a nondelegable duty arising out of contract. Stepanek, 191 Mont. at 438, 625 P.2d at 55. Indeed, we also held that the injured worker could not be held contributorily negligent as a matter of law. Stepanek, 191 Mont. at 439, 625 P.2d at 56.
¶76 In Nave v. Harlan Jones Drilling, 252 Mont. 199, 827 P.2d 1239 (1992), we held that a general contractor who assumes a nondelegable, contractual duty of safety “cannot avoid liability by attempting to shift the responsibility to someone else.” Nave, 252 Mont. at 203, 827 P.2d at 1241. And in Shannon v. Howard S. Wright Construction Co., 181 Mont. 269, 593 P.2d 438 (1979), we held that the general contractor had a duty to provide the employees of its subcontractors with a safe place to work because each retained control over the working conditions at the worksite. Shannon, 181 Mont. at 283, 593 P.2d at 446.
*21 ¶77 In the case at bar, we effectively nullify this well-established nondelegable duty doctrine. Here, the trial court allowed Shumaker to evade liability for breach of its nondelegable duty to provide a safe workplace by delegating that duty to subcontractor Balfour (Olson’s employer) and to Olson himself. Specifically, Shumaker presented evidence concerning safety meetings held by Balfour and argued that Olson was contributorily negligent by violating Balfour’s safety program. In this way, Balfour could blame Olson for “riding” on equipment in violation of safety mies, even though the nondelegable duty to provide safe transportation was Shumaker’s. On one hand, the court ruled that Shumaker breached its nondelegable duty to “furnish and assume full responsibility for... transportation,” but on the other hand, the court allowed Shumaker, through the testimony of Stephen Green (Balfour’s on-site superintendent), to blame Olson for not walking from the jobsite on the day of the accident. Olson’s injury occurred because Shumaker completely abandoned the jobsite and left all safety duties to Balfour.
¶78 On the day of the accident, Balfour transported Olson’s work crew to the jobsite in the box of Green’s pickup. However, Olson and other workers were transported from the jobsite in the front-end loader because Green and his pickup were occupied elsewhere. Shumaker was nowhere to be found.
¶79 On the day of the accident, Olson was 18 years old and had an eleventh grade education. He was the newest and youngest employee on his crew. Olson had been instructed to “pay attention” to his coworker, Mike Roberts, who was the lead man. Prior to the accident, Olson had seen other employees being transported on the front-end loader. At the end of a physically fatiguing workday, and in the absence of Green and his pickup, Olson observed his superior and crew leader, Roberts, along with his fellow employees, climb aboard the loader to be transported from the jobsite to where the workers had parked their personal vehicles. It was not Olson’s idea to be transported in the loader bucket; he was the last to get into the bucket. Given that his superior, Roberts, climbed into the cab of the loader, and because his fellow employees were being transported in the bucket, Olson believed that this form of transportation was not prohibited. No one told him otherwise. Indeed, Olson felt that he had no choice but to be transported in the bucket-everyone else in his crew was being transported from the jobsite in that fashion, and Roberts, the “lead man,” was in the cab. No alternate form of transportation *22 was offered to Olson. He had two choices: walk some distance back to the parking area, or ride in the bucket.
¶80 It is on these facts that this Court asserts Olson had some reasonable means or opportunity to avoid the hazard without endangering his employment. Opinion, ¶ 70. The Court’s assertion ignores the realities of the workplace and places an unreasonable burden on ordinary workers such as Olson.
¶81 If an employee’s superior and the employee’s senior co-employees engage in a particular workplace practice, it should come as no surprise that the newest and youngest member of the crew will be carried along. Indeed, we contemplated that in our decision in Shannon. See Shannon, 181 Mont. at 272, 593 P.2d at 440. Notwithstanding, the Court expects that Olson reasonably should have foreseen that a consequence of riding in the bucket would be that his supervisor would negligently cause the bucket to drop without warning, causing serious injury to Olson’s leg, and that he would have, therefore, told his superior that he was not going to ride in the bucket with his co-workers but, rather, was going to walk some distance back to his transportation after a physically fatiguing day.
¶82 While this proposition may serve as the basis for a theoretical legal argument, it makes no sense in the real-world workplace. An ordinary worker-especially the newest and youngest member of his crew-is going to do what he is told by his superior, especially when he has been instructed to “pay attention” to that person. Green’s “Incident Analysis” concluded that:
Safety was overlooked due to the following conditions: Workers fatigued at end of shift, long distances of the job site, minimal access from the site impassible from recent severe rain storm, not enough transportation for whole crew at one time, all played a part in the decision made to ride in the loader bucket. [Emphasis added.]
Under these circumstances and facts, for this Court to impose upon Olson an obligation to foresee the tragic consequences of riding in the bucket or the brashness to tell his boss and fellow employees that he is not going to accept the only transportation available to him, is both unfair and unrealistic-indeed it is absurd. Olson should not be held responsible for accepting the only available means of transportation when he was compelled to do so solely because of Shumaker’s breach of its nondelegable contractual duty and statutory duty to provide safe transportation to and from the jobsite.
*23 ¶83 Shumaker’s nondelegable duty should not be foisted upon Olson. The only reason Olson was put into the position of being transported in the front-end loader was because Shumaker undisputedly abdicated and breached its nondelegable duty to supervise safety and provide safe transportation. Thus, the only reason he was even in the position of having to meet the Court’s new test-i.e., to find “some reasonable means or opportunity to avoid the hazard without endangering [his] employment,” or to “reasonably foresee[ ]” the consequence of Shumaker’s breach of its nondelegable safety duty, Opinion, ¶ 69-is because Shumaker breached that duty in the first place. Olson did nothing to contribute to Shumaker’s breach. He was simply following the “lead man’s” lead and was doing what his fellow employees were compelled to do because of Shumaker’s breach.
¶84 The Court’s decision in this case turns the nondelegable-duty doctrine on its head. No longer is the contractor’s assumption of nondelegable duties of safety truly “nondelegable.” We now hold that the injured worker has an affirmative duty to avoid the very harm that the contractor has a nondelegable duty to prevent. We now delegate and impute to the injured worker the contractor’s nondelegable duty to prevent the foreseeable consequence of the contractor’s own failure to supervise and provide a safe workplace. We now allow the contractor to delegate its nondelegable safety duty.
¶85 If, as our caselaw clearly provides, contractual nondelegable duties of safety are truly that-nondelegable-then contributory negligence and comparative fault cannot be available to the breaching contractor as affirmative defenses. Where, as here, the breach of the general contractor’s nondelegable duty to provide safe transportation and the issue of causation have already been determined, as a matter of law, then any issue of the injured worker’s alleged contributory negligence must be foreclosed. In failing to recognize this principle, the trial court, and now this Court, have effectively nullified the nondelegable-duty rule. Contributory negligence should not have been submitted to the jury. The District Court erred in doing so, and we err in affirming the court’s decision.
¶86 Accordingly, while I concur in the Court’s decision on the issues presented by Shumaker, I strenuously dissent from the Court’s decision on Olson’s cross-appeal issue. As to that issue, I would reverse and order the District Court to reinstate the full verdict in Olson’s favor, without deduction for his supposed contributory negligence.
¶87 I dissent from the Court’s contrary decision.