No. 79-1

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

ANACONDA COMPANY, a Delaware Corp.,

Plaintiff and Appellant,

-vs-

GENERAL ACCIDENT FIRE & LIFE ASSURANCE
CORP., LTD, a British corp., and ARTHUR
G. McKEE & CO., a Delaware Corp.,

Defendants and Respondents.

Appeal From: District Court of the Second Judicial District,
In and for the County of Silver Bow, the
Honorable James D. Freebourn, Judge presiding.

Counsel of Record:

For Appellant:

Corette, Smith, Dean, Pohlman & Allen, Butte,
Montana
R.D. Corette argued, Butte, Montana
Gregory C. Black argued, Butte, Montana

For Respondent:

Poore, Roth, Robischon & Robinson, Butte, Montana
James Harrington argued, Butte, Montana

Submitted: May 28, 1980

Decided: September 8, 1980

Filed: SEP 8 - 1980

_____
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Appellants General Accident Fire & Life Assurance Corporation (General Accident) and Arthur G. McKee & Company (McKee) appeal from the order and judgment of the Silver Bow County District Court granting respondent Anaconda Company's (Anaconda) motion for summary judgment. Anaconda cross-appeals from the District Court's amended judgment, entered upon motion by McKee and General Accident which deleted recovery of attorney fees of $3,561.89.

On May 15, 1971, McKee and Anaconda entered into a contract to expand the capacity and install facilities relating to environmental controls at Anaconda's smelter facilities at Anaconda, Montana. Part of the contract dealt with insurance coverage and required McKee or any subcontractors of McKee to name Anaconda as an additional insured under their liability policies, insuring against risks of any kind relating to the construction at the smelter facilities undertaken by McKee or its subcontractors pursuant to the contract.

McKee complied with the contract by naming Anaconda as an additional insured under policies issued by General Accident. These policies provided coverage for public, contractor's and automobile liability. Some of the subcontracting work on the project was undertaken by Midland Industrial Electric Company (herein referred to as Midland), a wholly owned subsidiary of McKee. In accordance with the contract, Midland named Anaconda as an additional insured under a policy issued by General Accident, also providing public, contractor's and automobile liability coverage.

James W. Horner, an employee of Midland, was injured on November 18, 1975, while working at the Anaconda Smelter.

At that time Midland was installing pumps on old slurry tanks in a building at the Anaconda Smelter, commonly referred to as the "28' tank house." Gerald Kitchen and Ron Marshall, Anaconda employees, were preparing to paint the ceiling of the "28' tank house" at the time of the accident. They were rigging a scaffolding near the ceiling by laying 2" x 12" x 18' planking over 4" x 5" x 18' timbers which were supported by existing trusses. The Anaconda employees lost control of one of the timbers and it fell some 30 feet to the ground below. Horner, while working in the course and scope of his employment for Midland, was struck by the falling timber and was injured.

On January 19, 1977, Horner filed a suit against Anaconda in Silver Bow County alleging the negligence of Anaconda employees. By a letter of January 24, 1977, Anaconda made a formal demand of General Accident to insure and defend Anaconda in the action brought against it by Horner. By a letter of April 8, 1977, General Accident rejected Anaconda's demand on the grounds that the incident did not fall within the "description of operations covered" in the policy. On April 20, 1977, Anaconda again requested that General Accident insure and defend Anaconda in Horner's suit, which General Accident again refused to do. Anaconda then hired counsel to defend against Horner's suit; and subsequently, an out-of-court settlement of $125,000 was reached.

Anaconda then filed the instant action against McKee and General Accident seeking a declaration that General Accident was obligated to insure and defend Anaconda in Horner's lawsuit. Anaconda moved for summary judgment and a hearing was held. The District Court entered an order

-3-

adopting Anaconda's findings of fact and conclusions of law; and judgment was entered against McKee and General Accident pursuant to the District Court's granting of Anaconda's motion for summary judgment.

Judgment was in the amount of $125,000, representing the amount paid by Anaconda in settlement with Horner, plus $5,843.23 in attorney fees expended by Anaconda in defense of the settled claim, and $3,561.89 in attorney fees expended by Anaconda in the instant action. McKee and General Accident filed a motion to amend the findings of fact, conclusions of law and judgment. The District Court granted the motion to amend, in part, by deleting the award of attorney fees of $3,561.89, previously awarded in connection with the litigation of the instant case. This appeal by McKee and General Accident and Anaconda's cross-appeal followed.

The issues on appeal are as follows:

1. Whether the District Court erred in granting Anaconda's motion for summary judgment, finding that no genuine issue of material fact existed, and entering judgment for Anaconda.

2. Whether the District Court erred in denying Anaconda attorney fees incurred in the prosecution of this case.

General Accident and McKee contend that the District Court erred in granting Anaconda's motion for summary judgment. They argue that it was improper for the court to grant summary judgment because there remained unresolved questions of fact. They insist that liability of General Accident in this action is predicated on the question of whether or not the Anaconda employees were working pursuant to Contract No. 2081 at the time of the accident: a disputed issue.

Anaconda contends, and the District Court found, that it does not matter whether the Anaconda employees were working pursuant to the contract at the time of the injury; what matters is whether the injured employee was working pursuant to the contract. A review of the record indicates it has been admitted that at the time of the accident the injured workman was working within the scope of the work to be performed under Contract No. 2081.

Rule 56(c), M.R.Civ.P., states that summary judgment shall be rendered only if:

> ". . . the pleadings, depositions, answers to interrogatories, and admissions on file . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The question to be decided on a motion for summary judgment is whether there is a genuine issue of material fact and not how that issue should be determined; the hearing on the motion is not a trial. Fulton v. Clark (1975), 167 Mont. 399, 538 P.2d 1371; Matteucci's Super Save Drug v. Hustad Corporation (1971), 158 Mont. 311, 491 P.2d 705.

The party moving for summary judgment has the burden of showing the complete absence of any genuine issues as to all facts which are deemed material in light of those substantive principles which entitled him to a judgment as a matter of law. Harland v. Anderson (1976), 169 Mont. 447, 548 P.2d 613.

In Kober v. Stewart (1966), 148 Mont. 117, 121, 417 P.2d 476, this Court cited 6 Moore's Federal Practice, ¶56.15[3]:

> "'The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact.

"'Since it is not the function of the trial court to adjudicate genuine factual issues at the hearing on the motion for summary judgment, in ruling on the motion all inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion. And the papers supporting movant's position are closely scrutinized, while the opposing papers are indulgently treated, in determining whether the movant has satisfied his burden.'

"'. . . If there is any doubt as to the propriety of a motion, courts should, without hesitancy, deny the same.'" Kober v. Stewart, 148 Mont. at 122.

The underlying dispute between the parties to this appeal rests on a question of focus. General Accident and McKee insist that to determine liability one must focus on the actions of the Anaconda employees who caused the accident. Anaconda, on the other hand, argues that the focus should be on the injured workman.

Both parties base their arguments on varying interpretations of two provisions in Contract No. 2081:

"Article 10. Insurance.

". . .

"(d) Contractor agrees to cause owner to be made an additional named insured under all of contractor's liability policies insuring risks of any kind relating to the construction and to arrange, in terms approved in advance by owner, that such policies will constitute primary coverage in the event of any claims against owner that are insurable under any of such policies."

"Article 15. Subcontracts.

". . .

"(d) Contractor shall bring the insurance requirements of Paragraph 10 hereof to the attention of all persons invited to submit bids for subcontracts, at the time of any such invitation, and to all persons who are prospective subcontractors for subcontracts with respect to which the submission of bids is not to be invited, as early as practicable in the negotiations with respect to such subcontracts, and shall assure that such requirements are met by any successful subcontract bidder."

More specifically, both parties focus their arguments on the construction to be given to the language "risks of any kind relating to the construction" which is contained in the above quoted portions of Contract No. 2081. No mention is made by either party of any provision in the insurance policies themselves which would exclude coverage here. Further, a review of these policies did not bring any such exclusions to the surface.

It appears, therefore, that the resolution of this appeal is contingent on the construction we give the above quoted language. As stated earlier, both parties approach the problem from different focal points. It appears, however, that the real issue facing us is what type of risks did the parties intend to cover under the insurance provisions of Contract No. 2081.

As we stated in Glacier Campground v. Wild Rivers, Inc. (1978), ___ Mont. ___, 597 P.2d 689, 35 St.Rep. 1894, the intention of parties to a contract is to be ascertained, if possible, solely from language used in the instrument, and resort may be had to extrinsic evidence only when the contract, on its face, appears ambiguous or uncertain. See also sections 28-3-303; 28-3-306(2), MCA. Being the subject of this appeal, the language "risks of any kind relating to construction" appears ambiguous or uncertain.

This Court has previously held that summary judgment is usually inappropriate where the intent of the contracting parties is an important consideration. Fulton v. Clark (1975), 167 Mont. 399, 403, 538 P.2d 1371, 1373; Kober v. Stewart (1966), 148 Mont. 117, 122, 123, 417 P.2d 476, 479; 6 Moore's Federal Practice ¶56.17[41.-1].

General Accident admits that the contractor's liability

insurance which named Anaconda as an additional insured was issued to protect persons from risks created by the negligence of the insured. This type of coverage has been explained in general terms:

> "A contract of contractor's liability insurance will generally require that the harm be work-related or otherwise specify that there be some causal relationship between the nature of the contractor's [insured's] activity and the harm which is sustained." 11 Couch on Insurance, Sec. 44:338 (2d ed. 1963).

There must be some relationship between the risk created by the alleged insured tortfeasors, the Anaconda employees, and the harm sustained. In determining that relationship it is necessary to look at the employment contract which created the risk and the work to be done pursuant thereunder. Were we to focus merely on the activities of the injured workman and not the activities of the named insureds, we would render application of Contract No. 2081 overly broad and make General Accident the insurer of all Anaconda activities at the Smelter that resulted in injuries to anyone working pursuant to the contract, regardless of control and benefit. This Court will place no such burden on anyone.

In the record there is controverted evidence as to whether the work being performed by the Anaconda employees at the time of the accident was undertaken pursuant to Contract No. 2081. We hold this is a genuine issue of material fact.

The issue of whether the District Court erred in denying Anaconda attorney fees incurred in the prosecution of this case is not ripe for review at this time.

Plaintiffs have not met their burden of establishing the absence of any issue of material fact. The summary judgment is vacated and set aside. The cause is remanded to the District Court for trial.

_____
Justice

-8-

We concur:

_John Conway Harrison_

_Daniel J. Shea_
Justices

Mr. Justice John C. Sheehy, joined by Mr. Chief Justice
Frank I. Haswell, dissent:

The purpose of a motion for summary judgment under
Rule 56, is to eliminate unnecessary trial, delay, and expense.
Silloway v. Jorgenson (1965), 146 Mont. 307, 406 P.2d 167.
Under a motion for summary judgment, the formal issues presented
by the pleadings are not controlling and the court must con-
sider the depositions, answers to interrogatories, admissions
on file, oral testimony, and exhibits presented to determine
who should prevail on the motion.  Hager v. Tandy (1965), 146
Mont. 531, 410 P.2d 447.  When the facts established under the
motion for summary judgment are undisputed, and under those
undisputed facts the plaintiff is not entitled to prevail on
any legal theory, this Court on review should affirm the grant
of summary judgment to the plaintiff.

The salient undisputed facts that should decide this
appeal are these:

1.  General Accident and Fire & Life Assurance Corporation
Ltd., issued its liability policy, including comprehensive
general liability, in which policy Arthur G. McKee & Company
is the named insured, and the Anaconda Company by endorsement
is an additional insured.

2.  McKee provided the insurance policy to Anaconda by
reason of a contract with Anaconda that recited:

> "Contractor [McKee] agrees to cause Owner [Anaconda]
> to be made an additional named insured under all of
> Contractor's liability policies insuring risks of any
> kind relating to the construction and to arrange,
> in terms approved in advance by Owner, that such
> policies will constitute primary coverage in the
> event of any claims against Owner that are insurable
> under any of such policies."  (Emphasis added.)

3.  The insurance policy defines an "insured" as any person
or organization qualifying as an insured under the policy, and
further provides as to several insureds under the same policy:

-10-

". . . The insurance afforded <u>applies</u> <u>separately</u> <u>to</u> <u>each</u> <u>insured</u> against whom claim is made or suit is brought, except with respect to the limits of the company's [the insurance company] liability." (Emphasis added.)

4. At the time of his injury, McKee's employee was on the Anaconda premises pursuant to work in progress under contract no. 2081, the contract between McKee as contractor and Anaconda as owner.

5. Anaconda's employees were negligent in dropping the planking that caused the injury to McKee's employee.

In determining the liability of General Accident, if any, to Anaconda here, we look to the terms of the policy. An insurance policy, like any other contract, must be given that interpretation which is reasonable and which is consonant with the manifest object and intent of the parties. National Farmers Union Property and Casualty Company v. Colbrese (9th Cir. 1966), 368 F.2d 405; cert.den. 386 U.S. 991, 87 S.Ct. 326, 18 L.Ed.2d 336. The general rules of contract law apply to an insurance policy. Hildebrandt v. Washington National Insurance Company (1979), ___ Mont. ___, 593 P.2d 37, 36 St.Rep. 628, (life insurance); Universal Underwriters Insurance Company v. State Farm Mutual Auto Insurance Company (1975), 166 Mont. 128, 531 P.2d 668, (garage liability policy).

Under McKee's agreement with Anaconda, McKee agreed to make Anaconda an additional named insured in McKee's policies "insuring risks of any kind relating to the construction" which would constitute "primary coverage" in the event of a claim against Anaconda.

If this policy had been purchased by Anaconda in its own right, there is no doubt that the injury to McKee's employee would be a risk that was insurable for Anaconda under the policy. It makes no difference that here the insurance contract was purchased by McKee and that Anaconda

-11-

is named as an additional insured. By reason of the severability of the interests clause which we have quoted above, in fact, here Anaconda and McKee are two separate insureds under the same policy, the only limitation being the limits of liability of General Accident under its policy. Each of the two entities, McKee and Anaconda, are separately insured under all the terms of the policy. As an example of the effect of the severability clause, see Caribou Four Corners, Inc. v. Truck Insurance Exchange (10th Cir. 1971), 443 F.2d 796. See also, Indemnity Insurance Company of North America v. Pacific Clay Products Company (1970), 13 Cal.App.3d 304, 91 Cal.Rptr. 52; Liberty Mutual Insurance Company v. Truck Insurance Exchange (Ore. 1966), 420 P.2d 66 (contribution allowed).

Thus, the policy issued by General Accident comes within the provisions of contract no. 2081 between McKee and Anaconda that the policy provided by McKee will constitute "primary coverage in the event of any claims against [Anaconda] that are insurable under any of such policies."

The majority opinion makes it "overly broad" that General Accident should be the insurer of all Anaconda activities at the Smelter that result in an injury to anyone working pursuant to the contract, regardless of control and benefit. That statement overlooks the clause of contract no. 2081 that Anaconda would be an additional named insured with respect to "risks of any kind relating to the construction".

The endorsement which makes Anaconda an additional insured under the general liability policy is as follows:

> ". . . that the Anaconda Company, Anaconda, Montana, is an additional insured under this policy in accordance with provisions of contract no. 2081 with Arthur G. McKee and Company and dated May 15, 1971."

-12-

McKee's employee was not an interloper on Anaconda's premises at the time of the injury. He was there in furtherance of contract no. 2081. The risk that he might be injured by Anaconda's employees was within the "risks of any kind relating to the construction" for which McKee agreed to provide insurance to Anaconda.

There is no reason to return this case to the District Court under the guise of seeking the "intent" of the parties with respect to the insurance here provided. Where the language of the insurance policy admits of only one meaning, there is no basis for the interpretation of policy coverage under the guise of ambiguity. Universal Underwriters Insurance Company v. State Farm Mutual Auto Insurance Company (1975), 166 Mont. 128, 531 P.2d 668.

Since the injury to McKee's employee is plainly within the coverage extended to Anaconda by General Accident under this policy of insurance, the District Court was correct in awarding judgment to Anaconda for the amount required to settle the claim of McKee's employee, plus the cost of defense that Anaconda incurred in handling the claim against it by McKee's employee. The District Court in this case should be affirmed.

_____
                    Justice

I concur with the foregoing dissent.

_____
                 Chief Justice

-13-