No. 90-589

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

---

DEBRA NAVE, Personal Representative
of the Estate of Larry E. Nave, Jr.,
Deceased; and DEBRA NAVE, Surviving
Spouse; and BEAU D. NAVE, Surviving Son,
through DEBRA NAVE, Conservator,

        Plaintiffs and Appellants,

  -vs-

HARLAN JONES DRILLING and COP
CONSTRUCTION CO., a Montana Corporation,

        Defendants and Respondents.

FILED

FEB 20 1992

CLERK OF SUPREME COURT
STATE OF MONTANA

Ed Smith

---

APPEAL FROM:   District Court of the Sixteenth Judicial District,
                In and for the County of Powder River,
                The Honorable Kenneth R. Wilson, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

           Lloyd E. Hartford, Attorney at Law,
           Billings, Montana.

      For Respondents:

           Michael Heringer, Anderson, Brown, Gerbase,
           Cebull, Fulton, Harman & Ross, Billings, Montana.

---

                Submitted on Briefs:  June 7, 1991

                      Decided:  February 20, 1992

Filed:

                   Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Larry Nave, Jr., a construction worker, was employed on a highway construction project near Broadus, Montana. He was injured when the crank of a water pump struck him in the face. Nave sued the supplier of the pump (Harlan Jones Drilling) and the general contractor on the construction project (COP Construction Co.). In 1989, Nave committed suicide. His wife and son were substituted as plaintiffs.

Before trial, the District Court for the Sixteenth Judicial District, Powder River County, granted COP Construction's motion for summary judgment on the basis that the general contractor had no duty to ensure the safety of the workplace for the employee of a subcontractor. The Naves have appealed from the summary judgment. We reverse.

The issue presented in this appeal is whether under the terms of its contract COP Construction had a nondelegable duty, extending to the employee of a subcontractor, to maintain a safe workplace on its construction project.

Respondent COP Construction was the general contractor for a federal aid highway and bridge construction project on Highway 212 near Broadus, Montana. The State of Montana contracted with COP Construction to complete most of the project in the spring and summer of 1985. COP Construction, in turn, subcontracted a major portion of the contract to Byron Construction. Byron Construction

contracted to move the earth and build the roads to the new bridge crossing the Powder River.

Larry Nave, Jr., was an employee of Byron Construction. Nave was hired to drive a water wagon on the project. Water was needed on the job site for dust control and compaction of the foundation of the road. This water was pumped from the Powder River. Harlan Jones Drilling supplied the water pump to Byron Construction.

On the morning of July 15, 1985, Nave suffered facial and head injuries. Apparently he was attempting to start the engine on the water pump with a hand crank starter. The pump "kicked back" and the hand crank struck him in the face.

In 1988, Nave filed a complaint against Harlan Jones Drilling and COP Construction seeking damages for his medical expenses, lost earnings, and pain and suffering. Nave claimed accrued medical expenses, as of July 1988, of $9134.

In August 1989, Nave committed suicide. Debra Nave, his surviving spouse, and Beau Nave, his son, were substituted as plaintiffs. The Naves filed an amended complaint which included a cause of action for wrongful death. They alleged that Larry Nave suffered back and neck pain from his injuries which continued to increase in severity up to the time of his death, that he suffered from blackout spells caused by his injuries, and that he became depressed and abused alcohol in attempting to deal with his physical ailments. They alleged that these problems were partly responsible for Nave's death by suicide.

3

In August 1990, COP Construction filed a motion for summary judgment. COP Construction argued, among other things, that it had no duty to inspect the subcontractor's equipment and no duty to ensure safety in the workplace for the subcontractor's employees.

On October 31, 1990, the District Court granted COP Construction's motion for summary judgment. The District Court concluded that COP Construction did not have the duty to ensure a safe workplace for the subcontractor's employees, and therefore was not liable for the injuries Nave suffered.

The Naves have appealed from this decision.

Did COP Construction have a nondelegable duty, extending to the employee of a subcontractor, to maintain the safety of the workplace on its construction project?

The Naves contend that COP Construction had a nondelegable duty, extending to the employee of a subcontractor, to maintain the safety of the workplace on its construction project. We agree.

The outcome in this case is controlled by our decision in *Stepanek v. Kober Construction* (1981), 191 Mont. 430, 625 P.2d 51. Pursuant to that decision, COP Construction had a contractual duty to provide for the safety of all employees at the work site, and it cannot delegate that duty to its subcontractor, Byron Construction.

In *Stepanek*, the County of Yellowstone contracted with Kober Construction to build a recreational facility in Billings. Kober Construction subcontracted with Albert D. Wardell Masonry for the completion of the masonry work on the project. Stepanek, employed

4

by the subcontractor, was injured when he fell from the subcontractor's scaffolding. After Stepanek filed an action against Kober Construction, the district court granted summary judgment in favor of the general contractor.

On appeal, this Court noted that "[t]he primary contract between the general contractor and Yellowstone County required the general contractor to be 'responsible for initiating, maintaining, and supervising all safety precautions and programs'" on the construction project. *Stepanek*, 625 P.2d at 52. This Court further noted that it had previously held that similar contractual arrangements resulted in the creation of a nondelegable duty. *Stepanek*, 625 P.2d at 53 (citing *Ulmen v. Schwieger* (1932), 92 Mont. 331, 12 P.2d 856). This Court reviewed the important public policy concerns involved, including preventing accidents in the workplace and protecting against the economic costs of injuries. We concluded that the general contractor had a nondelegable duty to provide a safe working environment for the employees of subcontractors. *Stepanek*, 625 P.2d at 55. We also determined that the duties of the general contractor ("employer") mandated by the Montana Safe Place Statute, § 50-71-201, MCA, are owed to the employees of a subcontractor if there is a nondelegable duty arising from the contract. *Stepanek*, 625 P.2d at 55 (citing *Shannon v. Howard S. Wright Constr. Co.* (1979), 181 Mont. 269, 593 P.2d 438).

5

The District Court granted COP Construction's motion for summary judgment based on its determination that there was no provision in the primary contract expressly requiring COP Construction to "initiate, maintain, or supervise safety programs." The District Court therefore concluded that a nondelegable duty, based on the contract, had not been created. We note, however, that COP Construction's contract with the State of Montana imposed the following nondelegable duty on the general contractor:

VIII. SAFETY; ACCIDENT PREVENTION.

In the performance of this contract, the contractor shall comply with all applicable Federal, State and local laws governing safety, health and sanitation. The contractor shall provide all safeguards, safety devices and protective equipment and take any other needed actions, on his own responsibility, or as the State highway department contracting officer may determine, reasonably necessary to protect the life and health of employees on the job and the safety of the public and to protect property in connection with the performance of the work covered by the contract.

It is a condition of this contract, and shall be made a condition of each subcontract entered into pursuant to this contract, that the contractor and any subcontractor shall not require any laborer or mechanic employed in performance of the contract to work in surroundings or under working conditions which are unsanitary, hazardous, or dangerous to his health or safety, as determined under construction safety and health standards (Title 29, Code of Federal Regulations, Part 1926, formerly Part 1518, as revised from time to time), promulgated by the United States Secretary of Labor, in accordance with Section 107 of the Contract Work Hours and Safety Standards Act (83 Stat. 96). [Emphasis added.]

While the language is not identical to the language interpreted and applied in *Stepanek*, the obligation imposed by the

6

language in this contract is identical to the obligation found to exist in *Stepanek*. Because the duty imposed on COP Construction by its contract was nondelegable, COP Construction cannot avoid liability by attempting to shift the responsibility to someone else. Regardless of the obligations of Byron Construction or others, COP Construction retained the responsibility to provide Larry Nave with a safe place to work.

*Micheletto v. State* (1990), 244 Mont. 483, 798 P.2d 989, cited by COP Construction, is inapposite. In *Micheletto*, the contract between the State of Montana as general contractor and the Telephone Company as subcontractor did not contain language which established a nondelegable duty requiring the general contractor to supervise the safety of the construction operations. *See Micheletto*, 798 P.2d at 991-93. The language of COP Construction's contract with the State of Montana is in marked contrast with the contract language in *Micheletto*.

We conclude that the District Court erred in granting summary judgment to COP Construction. We reverse the District Court's decision and we remand this matter to the District Court for further proceedings consistent with this opinion.

_____
Justice

7

We concur:

_____
Chief Justice

_John Conway Harrison_

_Karla M. Gray_

_William E. Hunt Sr._

_P. C. McDonough_

_____
Justices

8

Justice Fred J. Weber specially concurs as follows:

I agree with the majority opinion which points out that under Stepanek, the primary contract between the general contractor and Yellowstone County specifically required the general contractor to be responsible for initiating, maintaining, and supervising all safety precautions and programs on the project. As pointed out in the majority opinion, the key part of the COP Construction's contract with the State of Montana imposed the following duty:

> VIII. SAFETY; ACCIDENT PREVENTION.
> . . . The contractor shall provide all safeguards, safety devices and protective equipment and take any other needed actions on his own responsibility, or as the State Highway Department contracting officer may determine, reasonably necessary to protect the life and health of the employees on the job . . .

I agree that the above contract requirement is equivalent to the obligation found to exist in the Stepanek contract. Although it is difficult to understand how COP Construction could be found to have failed to take any action necessary to reasonably protect Mr. Nave from the injury he received, I do concur in the majority opinion.

I find it important to suggest some of the contradictions which are present in this result. As stated in Micheletto v. State (1990), 244 Mont. 483, 798 P.2d 989, and in earlier Montana cases, Montana follows the general rule that absent some form of control over the subcontractor's method of operation, the general contractor is not liable for injuries to the subcontractor's employees. While there is no indication in this case that COP Construction retained any control over the subcontractor with regard to work performed by Mr. Nave on the job, COP Construction may be held responsible. The result is that a general contractor

9

under this specific form of contract could be held responsible for any injury suffered by an employee of a subcontractor. In order to protect himself, this suggests that a general contractor would be required to take all the steps necessary to protect an employee of a subcontractor from injury. This further suggests that a general contractor would be required to supervise every portion of the work performed by an employee of a subcontractor. Such supervision on the part of the general contractor appears to make it totally impractical to use subcontractors.

Our holding in this case clearly demands consideration of this problem by those who draft and participate in such construction contracts.

Justice

Chief Justice J. A. Turnage joins in the foregoing special concurrence.

Chief Justice