DA 07-0684

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 269

UNITED NATIONAL INSURANCE COMPANY,
a Pennsylvania Corporation,

        Defendant and Appellant,

   v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY,
a Minnesota Corporation,

        Plaintiff and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fourth Judicial District, In and For the County of Missoula, Cause No. DV 04-866 Honorable Edward P. McLean, Presiding Judge |

COUNSEL OF RECORD:

       For Appellant:

           Elizabeth O'Halloran; Milodragovich, Dale, Steinbrenner & Nygren, P.C.; Missoula, Montana

       For Appellee:

           Paul C. Meismer; Meismer & Associates, PLLC; Missoula, Montana

                  Submitted on Briefs:  October 16, 2008

                            Decided:  August 14, 2009

Filed:

             _____
                          Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     United National Insurance Company (United National) appeals from the opinion and order of the District Court for the Fourth Judicial District, Missoula County, granting St. Paul Fire & Marine Insurance Company's (St. Paul) motion for summary judgment and denying United National's motion for summary judgment and awarding St. Paul damages and attorney fees.  We affirm in part, reverse in part.

¶2     We consider the following issues on appeal:

¶3     1.     Did the District Court err in granting St. Paul's motion for summary judgment and denying United National's motion for summary judgment, holding United National breached its duty to defend its insured, Swank Enterprises?

¶4     2.     Did the District Court err in awarding St. Paul attorney fees for defense of the initial personal injury action and for the declaratory judgment action?

### FACTUAL AND PROCEDURAL BACKGROUND

¶5     In August 2001, general contractor Swank Enterprises (Swank) entered into a contract with subcontractor Advanced Fireproofing & Insulation (Advanced Fireproofing) to have Advanced Fireproofing perform fireproofing work as part of a construction project at the Kalispell Regional Medical Center (KRMC).  Michael Booth (Booth) was an employee of subcontractor Advanced Fireproofing.  In January 2002, while performing fireproofing work at the KRMC project, Booth fell from a hydraulic lift called a "scissor lift" and sustained injuries.  Swank owned the scissor lift Booth was using at the time of the accident and had provided the lift for Advanced Fireproofing's employees to use while working on the KRMC project.

2

¶6    Booth stepped backwards off the lift and fell approximately seven feet after a portion of the platform guardrail system on the scissor lift had been removed and was replaced with a latching chain rather than an actual guardrail, in violation of safety statutes and regulations. Because scissor lifts fall under the definitions of "scaffold" contained in the United States Department of Labor and Occupational Safety and Health Administration (OSHA) and the Montana Scaffolding Act (Scaffolding Act), a scissor lift must comply with the regulatory and statutory requirements applicable to scaffolds. Experts for both parties agree the lift was unsafe, it violated industry standards and government regulations, and the removal of the guardrail, and its replacement with a latching chain, was a cause of Booth's accident.

¶7    The prime contract between Swank and KRMC contained the following provisions pertaining to safety: "[t]he contractor shall enforce safety procedures . . ." "[t]he contractor shall have overall responsibility for safety precautions and programs in the performance of the Work," and "[t]he Contractor shall seek to avoid injury, loss or damage to persons or property by taking reasonable steps to protect: .1 its employees and other persons at the Worksite; .2 materials and equipment stored at on-site or off-site locations for use in the Work; and .3 property located at the site and adjacent to Work areas . . . ." Furthermore, regarding "materials brought to the worksite" the contract stated "[t]he Contractor shall be responsible for the proper delivery, handling, application, storage . . . of all materials and substances brought to the worksite by the Contractor in accordance with the Contract Documents and used or consumed in the performance of the Work." The subcontract between Swank and Advanced Fireproofing

also contained an indemnity provision stating that the subcontractor will "indemnify and hold harmless" the contractor for all "claims, damages, loss and expenses" resulting from "performance of the Subcontractor's Work."

¶8     In the underlying personal injury action (*Booth v. Swank Enterprises, et al.*), Booth sued Swank, along with Skyjack, Inc., the manufacturer of the lift, and Hytopz, Inc., the company that sold the lift to Swank. Swank's liability insurance carrier, St. Paul, tendered the defense to Advanced Fireproofing under the indemnity clause in the subcontract and to United National under the commercial general liability policy, under which Swank qualified as an additional insured. United National rejected the tender of defense, arguing the general contractor could not shift responsibility to the subcontractor for the general contractor's own statutory duties to maintain and supervise the scissor lift at the job site, and thus United National had no duty to defend or cover the loss. Because United National refused the tender of defense, St. Paul continued to defend the claims asserted by Booth and, in August 2004, St. Paul settled the claim with Booth.

¶9     The subcontract between Swank and Advanced Fireproofing required Advanced Fireproofing to purchase and maintain commercial general liability insurance listing Swank as an additional insured. According to the requirements of the subcontract, Advanced Fireproofing purchased liability insurance from United National. The policy contained an endorsement extending insurance coverage to "certain additional insureds" and United issued a certificate of insurance showing Swank as an additional insured. The certificate of insurance states specifically that "Swank Enterprises and all related entities,

4

the owner, and all other parties as required by contract, are named as Additional Insured on a Primary Non-Contributing Basis."

¶10 The current action began in September 2004 when St. Paul brought a declaratory judgment action against United National, seeking payment of the amount it paid to settle the claim with Booth as well as the attorney fees and costs it incurred in defending the original action and the declaratory judgment action. Both parties then filed cross-motions for summary judgment. In a June 2007 opinion and order regarding the declaratory judgment, the District Court granted St. Paul's motion for summary judgment and denied United National's and awarded St. Paul a judgment of $140,000, which equaled the amount St. Paul paid to settle the claim in *Booth v. Swank Enterprises, et al.*. In an October 2007 order and judgment, the District Court ordered United National to pay St. Paul the $140,000 awarded in the June 2007 judgment as well as $24,695.54 in attorney fees for its defense of Swank in *Booth v. Swank Enterprises, et al.*, and $7,095.66 in attorney fees for the declaratory judgment action. United National now appeals the District Court's judgment and order awarding St. Paul damages and attorney fees.

## STANDARD OF REVIEW

¶11 Our standard of review of an appeal from a summary judgment order is de novo. *National Cas. Co. v. American Bankers Ins. Co. of Florida*, 2001 MT 28, ¶ 13, 304 Mont. 163, 19 P.3d 223. We review a district court's summary judgment to determine whether it was correctly decided pursuant to Rule 56, M. R. Civ. P., which provides that summary judgment is only appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *National Cas. Co.*, ¶ 13. In the

5

current case, both parties moved for summary judgment, agreeing there were no genuine issues of material fact.

¶12 The interpretation of an insurance contract is a question of law, which we review de novo to determine whether it is correct. *Cusenbary v. United States Fid. & Guar. Co.*, 2001 MT 261, ¶ 9, 307 Mont. 238, 37 P.3d 67. We are guided in our interpretation of insurance policies by the well-established principle that when the language of a policy is clear and explicit, the policy should be enforced as written. *National Cas. Co.*, ¶ 13.

¶13 We review a district court's decision to award attorney fees for an abuse of discretion. *Renville v. Farmers Ins. Exch.*, 2004 MT 366, ¶ 20, 324 Mont. 509, 105 P.3d 280. A district court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or in excess of the bounds of reason resulting in substantial injustice. *Kuhr v. City of Billings*, 2007 MT 201, ¶ 14, 338 Mont. 402, 168 P.3d 615.

## DISCUSSION

¶14 ***Did the District err in granting St. Paul's motion for summary judgment and denying United National's motion for summary judgment, holding United National breached its duty to defend its insured, Swank Enterprises?***

¶15 United National argues that "[n]either principles of contractual indemnity, nor the additional-insured endorsement to the United National policy, permit St. Paul to shift Swank's liability to Advanced Fireproofing or United National." United National claims that doing so would undermine the Montana Scaffolding Act's goal of making scaffolding operations safe. United National further argues that, even if the additional insured endorsement applied, "the St. Paul policy [should] be deemed primary, and the United National policy excess, with respect to Booth's claim." United National

6

concludes the District Court erred in determining the additional insured endorsement contained in Advanced Fireproofing's policy provided coverage for Swank's own negligence, and Advanced Fireproofing owed no duty to indemnify or provide insurance to Swank for Swank's liability to Booth.

¶16 St. Paul argues that at issue is not liability under the Scaffolding Act because "[t]here was never any determination that [Swank] violated any duties it owed to [Booth]" and the alleged violations were never proved and the matter was "resolved in a compromise settlement without disposition of the liability on the merits." Rather, St. Paul argues, at issue is the language in the United National policy and the scope of that policy's coverage of Swank. St. Paul states that Swank was not only *intended* to be an additional insured under the United National policy but Swank "was [actually] added as an additional insured on a primary, non-contributory basis through a Certificate of Insurance issued by Advanced Fireproofing and/or its insurer." St. Paul states "[t]he subcontract between Advanced Fireproofing and Swank Enterprises required that Swank Enterprises be added as an additional insured precisely for the type of claim that resulted from the injuries to [Booth]." St. Paul further argues United National "breached its duty to defend by failing to accept the tender of defense" and United National "confuses contractual responsibilities between Advanced Fireproofing and Swank Enterprises with the contractual responsibilities United National had to its additional insured . . . ."

**A.    Montana Scaffolding Act**

¶17 The Montana Scaffolding Act, set forth in Title 50, Chapter 77, MCA, defines "scaffold" or "scaffolding" as "a temporarily elevated platform and its supporting

7

structure that is used on a construction site to support a person, material, or both." The Scaffolding Act provides that "[s]ubject to the comparative negligence principles provided in Title 27, chapter 1, part 7, a contractor, subcontractor, or builder who uses or constructs a scaffold on a construction site is liable for damages sustained by any person who uses the scaffold . . . when the damages are caused by negligence of the contractor, subcontractor, or builder in the use or construction of the scaffold." Section 50-77-101, MCA.

¶18   A violation of the duties imposed by the Scaffolding Act imposes absolute liability. *Slater v. Central Plumbing and Heating Co.*, 275 Mont. 266, 269, 912 P.2d 780, 782 (1996). This Court has held that the statutory duty of an employer to provide its employees with a safe workplace is extended to a general contractor when that general contractor controls job safety or has a nondelegable duty of safety, arising out of contract. *Stepanek v. Kober Const.*, 191 Mont. 430, 434, 625 P.2d 51, 53 (1981). Furthermore, where a contract imposes a nondelegable duty to ensure a safe place to work, a general contractor "cannot avoid liability by attempting to shift the responsibility to someone else." *Nave v. Harlan Jones Drilling*, 252 Mont. 199, 203, 827 P.2d 1239, 1241 (1992).

¶19   United National argues that the indemnity clause in the contract does not apply because the Scaffolding Act prohibits Swank from shifting its liability to Booth for breach of nondelegable duties. United National further argues that "[t]he prime contract imposed on Swank the duty to control, manage, and supervise safety on the construction project . . . [a]nd Swank was responsible for the proper handling of all materials – like the scissor lift – it brought to the work-site." St. Paul counters stating "the entity controlling

8

the use of the scissor lift at the time of the loss was Advanced Fireproofing, not Swank Enterprises." Furthermore, "it is Advanced Fireproofing and [Booth] who were in complete control of the cleanliness and operation of the scaffold in question." St. Paul concludes stating "[t]here was never any determination that Swank Enterprises violated any duties it owed to [Booth]. Many violations were alleged, but none [was] proved and the matter was resolved in a compromise settlement without disposition of the liability issues on the merits."

¶20    This Court has held that contractual provisions similar to those in the prime contract between Swank and KRMC have created a nondelegable duty to control workplace safety and to comply with the requirements of the Scaffolding Act. *See Steiner v. Dept. of Highways*, 269 Mont. 270, 276-77, 887 P.2d 1228, 1232-33; *Slater*, 275 Mont. at 272, 912 P.2d at 783; *Stepanek*, 191 Mont. at 439, 625 P.2d at 56. As in *Stepanek*, the prime contract between Swank and KRMC indicates Swank maintained the responsibility to control safety on the project. The prime contract gave Swank the overall responsibility for safety precautions and programs, the responsibility for protecting employees at the worksite, and the responsibility for the safety of materials brought to the worksite. According to our jurisprudence interpreting the Scaffolding Act, Swank cannot delegate its contractual duty to maintain safety, arising from the prime contract with KRMC. Thus, Swank had a nondelegable duty under the Scaffolding Act to ensure the safety of the scissor lift.

¶21    While the Scaffolding Act and the case law interpreting that act create a nondelegable *duty* to ensure workplace safety, the party with that duty can still insure

9

itself from *liability* arising out of violations (alleged or proven) of that duty as long as the duty itself is not being delegated to another. In other words, carrying insurance for liability under the Scaffolding Act is not the same as delegating one's duty to comply with the Scaffolding Act. If Swank's insurance coverage is not sufficient to satisfy a judgment, then Swank remains liable for the excess. Swank is not attempting to delegate its duty under the Scaffolding Act. Rather, Swank seeks a determination that United National's policy, listing Swank as an additional insured, covers Swank for its liability to Booth.

¶22 The Dissent asserts this conclusion is a "sea change" in our nondelegable duty law and that our holding in fact allows a general contractor to delegate its nondelegable duty for workplace safety to a third party. The Dissent claims "Advanced Fireproofing now bears the *liability* for Swank's breach of its nondelegable *duty* to provide workplace safety" and "Advanced Fireproofing must either provide workplace safety or, alternatively, incur the financial burden (through its insurer) of Swank's breach of its duty to provide a safe place to work." Dissent, ¶ 43. Swank was insured under United National's policy through an "additional insured" endorsement. This endorsement had the effect of making Swank an insured of United National. Following the Dissent's reasoning to its logical conclusion, if a general contractor carries insurance (either on its own or through a provision in a subcontract) to cover liability for failure to provide workplace safety, that insurance contract would constitute a delegation of the general contractor's nondelegable duty; it would, in the words of the Dissent, be "foisting its own misconduct and neglect" onto a third party—the insurance company. Despite the

10

protestations of the Dissent, we have never held that a contractor cannot insure itself for the "absolute liability" that arises from a violation of the duty to provide workplace safety. Indeed, such a holding would be counterproductive in that insurance coverage provides a further resource to satisfy an injured worker's claim.

¶23 Swank has fulfilled its duty under the Scaffolding Act. Swank's liability was reflected by and accounted for in its settlement of Booth's claim. Swank's subcontract with Advanced Fireproofing required Advanced Fireproofing to obtain insurance covering Swank as an additional insured, on a primary non-contributing basis, in contemplation of the type of incident at issue here. Although our holding is not premised upon the assumption, we note as an aside that if Advanced Fireproofing accounted for the cost of the insurance in its bid for the work, Swank indirectly paid for that insurance. Thus, by requesting that Advanced Fireproofing indemnify Swank for Swank's own negligence, Swank is not delegating a nondelegable duty under the Montana Scaffolding Act. Rather, that duty has been satisfied. The issue is, thus, a question of insurance contract law.

**B.     Indemnity Provision in the Subcontract**

¶24 We now turn to the indemnity provision in the subcontract between Swank and Advanced Fireproofing to determine whether Swank can be indemnified for its liability arising from an alleged violation of its duty under the Scaffolding Act. This Court has adopted a standard under which "contractual provisions that indemnify a party for its own negligence must be 'clear and unequivocal' to be enforceable." *Slater*, 275 Mont. at 270, 912 P.2d at 782 (citing *Sweet v. Colborn Sch. Supply*, 196 Mont. 367, 369-70, 639 P.2d

521, 523 (1982)). In *Slater*, this Court determined the contractual provisions were not sufficiently clear and unequivocal to indemnify a general contractor for its own negligence. *Slater*, 275 Mont. at 271, 912 P.2d at 782. In *Slater*, we determined that while the indemnity provision clearly required the subcontractor to indemnify the general contractor for damages arising out of the *subcontractor's* negligence, it did not require the subcontractor to indemnify the general contractor for damages arising out of the general contractor's *own* negligence. The Court in *Slater* held the indemnity provision was not sufficiently clear and unequivocal in its intent to indemnify the general contractor for its own negligence. *Slater*, 275 Mont. at 271, 912 P.2d at 782.

¶25 Similar to *Slater*, the contract provisions at issue in the instant case do not show clear and unequivocal intent to indemnify Swank for its own negligence. Section 9.1.1 of the subcontract agreement between Swank and Advanced Fireproofing states in relevant part:

> INDEMNITY To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless the Contractor, the Contractor's other subcontractors . . . from and against all claims, damages, loss and expenses, including but not limited to attorneys' fees, costs and expenses arising out of or resulting from the performance of the Subcontractor's Work.

The contract provision above is even less specific than the indemnity provision at issue in *Slater*. Thus, as in *Slater*, we find the indemnity provision above is not specific in its intent to indemnify Swank for Swank's liability to Booth for its own negligence. Therefore, we must now turn to the language in United National's insurance policy to

determine whether the policy covers Swank in its own right and whether liability for Swank's own negligence falls within the scope of the policy.

## C.    Additional Insured Endorsement

¶26    St. Paul asserts that Swank was an additional insured on a primary non-contributing basis under the terms of the United National policy and United National cannot now "pick and choose language that supports its view of limiting coverage . . . [t]he policy must be looked at in its entirety." United National counters stating that we must look to the intent of the contract language and that the contract language did not intend to cover Swank for Swank's own negligence.

¶27    We have held that "[a]n insurance policy, like any other contract, must be given that interpretation which is reasonable and which is consonant with the manifest object and intent of the parties." *Anaconda Co. v. General Acc. Fire & Life Assur. Corp., Ltd.*, 189 Mont. 447, 455, 616 P.2d 363, 367 (1980). The subcontract agreement specified that Advanced Fireproofing must obtain a policy covering Swank. More specifically, Article 9, § 9.2.1 of the subcontract agreement states:

> [b]efore commencing the Subcontractor's Work, and as a condition of payment, the Subcontractor [Advanced Fireproofing] shall purchase and maintain insurance that will protect it from the claims arising out of its operations under this Agreement, whether the operations are by the Subcontractor, or any of its consultants or subcontractors or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable.

Exhibit B to the subcontract agreement states that "Swank Enterprises must be listed as additional insured, and a copy of the additional insured endorsement must be attached to the certificate."

¶28 Endorsement #5 to United National's policy covering Advanced Fireproofing states the policy affords insurance coverage to "additional insureds," pursuant to the following language:

> [s]ubject to all its terms, conditions and endorsements, such insurance as is afforded by the policy shall also apply to the following entity(ies) as an additional insured, but only as respects liability arising from (1) premises owned by or occupied by the Named Insured, or (2) the contract entered into by the Named Insured.

The policy names additional insured entities as "[a]ll entities for which a Certificate of Insurance has been issued naming them as an Additional Insured with a copy of the Certificate of Insurance on file with the Company, and required by a written contract." United National then issued a "Certificate of Liability Insurance" stating that "Swank Enterprises and all other related entities, the owner, and all other parties as required by contract, are named as Additional Insured on a Primary Non-Contributing Basis." Furthermore, the "Primary Insurance Endorsement" of the policy states:

> Subject to the terms and conditions of this policy, it is understood and agreed that with respect to claims arising out of work performed by the Named Insured, the coverage afforded herein shall be **primary** in relation to any policies carried by any person or organization to whom or to which the Named Insured is obligated by virtue of a written contract, and then only as required by said written contract. (Emphasis added.)

¶29 Montana law is well-settled that an insurer's duty to defend its insured arises when an insured sets forth facts that represent a risk covered by the terms of an insurance policy. *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 20, 321 Mont. 99, 90 P.3d 381. And the duty to defend is independent from and broader than the duty to indemnify created by the same insurance contract. *Staples*, ¶ 21. Unless there exists an

14

unequivocal demonstration that the claim against the insured does not fall within the policy coverage, the insurer has a duty to defend. *Insured Titles, Inc. v. McDonald*, 275 Mont. 111, 115-16, 911 P.2d 209, 211-12 (1996). And any doubt as to the existence of a duty to defend must be resolved in the insured's favor. Allan D. Windt, *Insurance Claims and Disputes*, § 4:2 (4th ed., West 2001).

¶30    It is clear from the plain language of the policy that United National intended to cover Swank for the type of incident that occurred here. The policy covers Swank as an additional insured on a primary non-contributing basis. The policy plainly states that it affords additional coverage to additional insured for "liability arising from (1) premises owned by or occupied by the Named Insured, or, (2) the contract entered into by the Named Insured." United National's suggested interpretation of its policy would render the policy meaningless. United National argues that even if United National's policy covering Advanced Fireproofing extended coverage to Swank, that coverage would be excess coverage, secondary to St. Paul's coverage. In interpreting insurance contracts, we "accord the usual meaning to the terms and the words . . . and we construe them using common sense." *Modroo v. Nationwide Mut. Fire Ins. Co.*, 2008 MT 275, ¶ 23, 345 Mont. 262, 191 P.3d 389. The language in the "Certificate of Liability Insurance" issued to Swank under the United National policy plainly states that Swank is "named as Additional Insured on a Primary Non-contributing basis." It is clear from the plain language of the insurance contract that the United National policy was intended to be primary.

15

¶31 Thus, the District Court was correct in determining that United National had a duty to defend Swank and that United National's policy is primary, pursuant to the language in the additional insured endorsement in United National's policy. The District Court did not err in granting St. Paul's motion for summary judgment and denying United National's motion for summary judgment and holding United National breached its duty to defend Swank.

¶32 ***Did the District Court err in awarding St. Paul attorney fees for defense of the initial personal injury action and for the declaratory judgment action?***

¶33 In its October 2007 order and judgment, the District Court awarded St. Paul $24,695.54 in attorney fees for the underlying personal injury case *Booth v. Swank Enterprises, et al.* and $7,095.66 in attorney fees for the declaratory judgment action. United National argues the attorney fees "were neither necessarily nor properly awarded under the Uniform Declaratory Judgment Act or . . . *Trustees of Indiana University v. Buxbaum*, 2003 MT 97, 315 Mont. 210, 69 P.3d 663 . . . [and] consequently, the District Court's determination that fees . . . were attributable to United National was in error." United National further argues "St. Paul should have sought the monetary relief it sought through a properly asserted subrogation claim . . . without the invocation of the UDJA. St. Paul's decision to seek summary judgment in the declaratory judgment context was a tactical decision and the proper claim was for subrogation of St. Paul's insured's contractual rights."

¶34 St. Paul argues it is "entitled to attorney fees and indemnity amounts paid on behalf of Swank Enterprises due to United National's failure to fulfill its duty to defend

and indemnify Swank." St. Paul further argues "[t]his is not a subrogation action, as characterized by United National . . . [i]t is rather a direct action against United National by St. Paul as the assignor of the rights of [Swank] for a determination that United National had an obligation to provide a defense and indemnify [Swank] under the terms of its insurance contract."

¶35 The Uniform Declaratory Judgment Act allows for claims to be brought by "[a]ny person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder." Section 27-8-202, MCA. The stated purpose of the Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." Section 27-8-102, MCA; *Tarlton v. Kaufman*, 2008 MT 462, ¶ 33, 348 Mont. 178, 199 P.3d 263. Furthermore, this Court has stated that "[a] declaratory proceeding is primarily intended to determine the meaning of a law or a contract and to adjudicate the rights of the parties therein . . . ." *Tarlton*, ¶ 33 (citing *Raynes v. City of Great Falls*, 215 Mont. 114, 120-21, 696 P.2d 423, 427 (1985)).

¶36 United National argues St. Paul improperly brought its action under the UDJA. However, Swank's claim was not simply a subrogation action, but rather an action to determine the scope of coverage under United National's insurance policy covering Swank. Such an action squarely fits within the intent of the UDJA's liberally constructed

purpose "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations . . . ." Thus, Swank properly brought the claim under the UDJA, and we now turn to the question of whether the District Court abused its discretion to award attorney fees under § 27-8-313, MCA.

¶37 Montana follows the general American Rule that a party in a civil action is not entitled to attorney fees absent a specific contractual or statutory provision. *Martin v. SAIF Corp.*, 2007 MT 234, ¶ 22, 339 Mont. 167, 167 P.3d 916 (citing *Trustees of Indiana University v. Buxbaum*, 2003 MT 97, ¶ 19, 315 Mont. 210, 69 P.3d 663). Because the contracts at issue do not contain language regarding attorney fees, we must turn to the statutory exception. Section 27-8-313, MCA does not contain a specific attorney fee provision; however, it gives a court the ability to grant "supplemental relief" when the court deems such relief is "necessary and proper." Section 27-8-313, MCA. This Court held in *Buxbaum* that § 27-8-313, MCA provides a statutory basis for awarding supplemental relief in the form of attorney fees in declaratory judgment actions if the award is "necessary and proper." *Buxbaum*, ¶ 42. The Court in *Buxbaum* did not define what constitutes "necessary and proper." However, this Court has adopted the "tangible parameters" test to determine whether attorney fees granted under § 27-8-313 are necessary and proper. *Martin*, ¶ 23 (citing *Renville*, ¶ 27). The tangible parameters test provides that fees are "necessary and proper" when (1) an insurance company possesses what the plaintiffs sought in the declaratory relief action; (2) it is necessary to seek a declaration showing that the plaintiffs are entitled to the relief sought; and (3) the declaratory relief sought was necessary in order to change the status quo. *Martin*, ¶ 23.

18

And this Court has recognized a party's "tactical decision" to file a declaratory judgment action does not automatically presume attorney fees are "necessary or proper." *Buxbaum*, ¶ 45.

¶38 While § 27-8-313, MCA gives district courts the discretion to award "further relief" in the form of attorney fees if a court determines such an award is "necessary and proper," implicit in that determination is a threshold question of whether the equities support a grant of attorney fees. In the only case since *Buxbaum* where we have upheld a district court's discretionary grant of attorney fees under § 27-8-313, the fees were granted in order to prevent an anomalous result where one party would have been better off had it never brought the claim in the first place. (*See Renville*, ¶ 28, affirming the district court's grant of attorney fees to an injured party seeking declaratory judgment as to payment of medical costs owed by an insurance company). In *Renville*, we determined fees were necessary and proper in order to afford meaningful relief to the injured party. Thus, while a district court has the discretion to award attorney fees under § 27-8-313, MCA, such fees are only appropriate if equitable considerations support the award. This determination must be made before a court applies the criteria of the tangible parameters test.

¶39 In applying the equitable consideration described above to the facts before us, we find the equities do not support an award of attorney fees. The instant case is distinct from the facts of *Renville* where an injured party expended more on the cost of litigation than it received as a result of the litigation, thus potentially rendering the declaratory relief meaningless. Rather, here we have two similarly situated parties disputing the

interpretation of a contract. Under these circumstances, the equities do not support an award of attorney fees to St. Paul. Because this threshold requirement is not met, we do not even reach an analysis of the tangible parameters test. Therefore, the District Court abused its discretion by acting arbitrarily in its award of attorney fees to St. Paul.

¶40　We reverse the award of attorney fees.


　　　　　　　　　　　　　　　　　　　　/S/ W. WILLIAM LEAPHART

We concur:

/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ JIM RICE



Justice James C. Nelson concurs and dissents.

¶41　I concur in the analysis of Issue 2, but otherwise dissent from the Court's decision.

¶42　As to Issue 1, I agree that under our well-established precedent cited by the Court, Swank had a nondelegable duty under the Scaffolding Act to ensure the safety of the scissor lift. Opinion, ¶ 20. I disagree with the Court's conclusion, however, that *liability* for the breach of a nondelegable *duty* can be so conveniently shifted to a third party, or its insurer, by way of (1) an indemnity/hold-harmless clause running from the party which does not bear the *nondelegable* duty for workplace safety to the party who has contractually assumed that duty, Opinion, ¶ 7, coupled with (2) an insurance policy purchased by the former party naming the latter as an additional insured, Opinion, ¶ 22.

¶43 This approach is flawed for two reasons. First, the Court's holding completely circumvents what we decreed in *Nave v. Harlan Jones Drilling*—i.e., "[b]ecause the *duty* imposed on [the general contractor] by its contract was nondelegable, [the general contractor] cannot avoid *liability* by attempting to shift the responsibility to someone else." *Nave v. Harlan Jones Drilling*, 252 Mont. 199, 203, 827 P.2d 1239, 1241 (1992) (emphasis added). Here, the Court authorizes precisely what *Nave* prohibits. Advanced Fireproofing now bears the *liability* for Swank's breach of its nondelegable *duty* to provide workplace safety. Advanced Fireproofing must either provide workplace safety or, alternatively, incur the financial burden (through its insurer) of Swank's breach of its duty to provide a safe place to work. *See* Opinion, ¶ 21 (Swank remains liable for excess damages).

¶44 Through smoke and mirrors Swank has clearly accomplished what we held in *Nave* it could not. The Court's pronouncement to the contrary, notwithstanding, Opinion, ¶ 25, Swank has not fulfilled its duty under the Scaffolding Act by shifting the liability for noncompliance with the Act to Advanced Fireproofing. It was Swank's nondelegable duty to insure that the scissor lift was safe; there was an accident because the scissor lift was not safe; Swank, thus, breached its duty to provide a safe place to work; and Swank was absolutely liable for this breach. Opinion, ¶ 18. Yet, Advanced Fireproofing (and, ultimately, its insurer) is held liable and financially responsible for Swank's breach. Swank is not absolutely liable at all; Advanced Fireproofing is. We have effectively overruled the underpinnings for our seminal nondelegable duty decision in *Ulmen v. Schwieger,* 92 Mont. 331, 12 P.2d 856 (1932) (general contractor, which has assumed a

21

nondelegable duty of workplace safety, remained in direct control and the provisions of the Scaffolding Act apply).

¶45    Second, the Court's approach totally abrogates the important public policy reasons underlying the nondelegable duty doctrine.  In *Nave*, we reaffirmed these important public policy concerns as "including preventing accidents in the workplace and protecting against the economic costs of injuries."  *Nave*, 252 Mont. at 202, 827 P.2d at 1240.  As a result of the Court's decision here, the general contractor has no incentive whatsoever to discharge its nondelegable duty to provide workplace safety.  If an employee of a subcontractor is injured, so what?  The subcontractor is contractually obligated to "indemnify and hold-harmless" the general contractor from its breach of duty; the subcontractor's insurer is obligated to  pay  the  injured  subcontractor's employee's damages; and the subcontractor is obligated to bear the liability and financial responsibility for any excess damages.  *See* Opinion, ¶ 21.  What could be more convenient and financially foolproof for the general contractor?  The general contractor can breach its nondelegable duty with impunity, and require a third party to pick up the tab for the economic costs.  As a result of our decision here, there is no reason for the general contractor with a nondelegable duty of workplace safety to actually perform its duty.  As long as the general contractor can require a subcontractor to indemnify and hold the general contractor harmless and insure the general contractor against the general contractor's own negligence, the general contractor is home free.  The Court's decision effectively overrules the underpinnings of *Nave*; *Beckman v. Butte-Silver Bow County,* 2000 MT 112, 299 Mont. 389, 1 P.3d 348; *Slater v. Central Plumbing and Heating Co.,*

22

275 Mont. 266, 912 P.2d 780 (1996); *Gibby v. Noranda Minerals Corp.*, 273 Mont. 420, 905 P.2d 126 (1995); *Stepanek v. Kober Const.*, 191 Mont. 430, 625 P.2d 51 (1981), and *Shannon v. Howard S. Wright Const. Co.*, 181 Mont. 269, 593 P.2d 438 (1979).

¶46 Sadly, this is the second decision in as many years in which this Court has made a sea-change in the law of nondelegable duty. The Court has ignored our settled nondelegable duty jurisprudence and has permitted a general contractor which has blatantly breached its nondelegable duty for workplace safety to effectively delegate that duty to a third party. In *Olson v. Shumaker Truck. and Excav. Contr.*, 2008 MT 378, 347 Mont. 1, 196 P.3d 1265, this Court held that the nondelegable duty of workplace safety can, in fact, be delegated through comparative negligence to the injured subcontractor's employee—i.e., the very individual whom the nondelegable duty of job-site safety was adopted to protect. In *Olson,* this Court made the injured subcontractor's employee responsible and financially liable for providing his own safe place to work. For the first time, this Court made the nondelegable duty of workplace safety delegable by providing the negligent general contractor with a convenient scapegoat on which to foist its own misconduct and neglect. *Olson*, ¶¶ 73-87 (Nelson, J., concurring and dissenting).

¶47 In the case *sub judice,* the Court weakens the nondelegable duty doctrine even further. Now, a general contractor which has breached its nondelegable duty of workplace safety has two scapegoats on which to foist its own negligence and misconduct—(1) on the injured subcontractor's employee by way of comparative negligence, *Olson,* and (2) on the subcontractor itself by way of an indemnity/hold-harmless agreement coupled with a required insurance clause. It is difficult to discern

what is left of the nondelegable duty doctrine. Indeed, between *Olson* and our decision today, we have effectively drained our well-established nondelegable duty doctrine jurisprudence of any vitality. I cannot agree.

¶48 I would reverse. I dissent from our failure to do so.


/S/ JAMES C. NELSON


Justice Patricia O. Cotter joins in the Concurrence and Dissent of Justice James C. Nelson.

/S/ PATRICIA O. COTTER